UNITED STATES of America, Appellee,

v.

Hector HERNANDEZ, Defendant, Appellant.

No. 79–1027.

United States Court of Appeals, First Circuit.

Argued May 5, 1980.

Decided June 18, 1980.

---

Judith M. Freedman, Boston, Mass., for defendant, appellant.

Justo Arenas Fernandez, Asst. U. S. Atty., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant and one Alvarez were indicted and convicted of conspiracy to distribute eight pounds of cocaine between July 31, 1978, and August 9, 1978. Appellant moved for judgment of acquittal and raises here only the issue of evidentiary adequacy.

The alleged conspiracy involved appellant Alvarez, one Manny Cabrera Rosario who pleaded guilty, and one Henry Cepero, a fugitive. All the evidence referring to appellant concerned conduct, including conversations, before and after the purchase of one ounce of cocaine from Cabrera by a government informer, Raymond Torrens, on August 1, 1978. Most of the evidence at the trial was of later events and pertained to the other defendants—five telephone conversations about an eight pound drug transaction between a government agent and Cabrera; and, on August 9, 1980, discussions about the sale between the two while driving around San Juan in an automobile, surveillance of the agreed upon rendezvous for the transaction, and attempted arrests at the scene of both Cabrera and co-defendant Alvarez followed by a high speed chase of both, the arrest of Alvarez, and the search of both vehicles.

Appellant was not present at any of the events of August 9 nor was he involved in the discussions leading up to the planned August 9 transaction. His name was not mentioned and no suggestion was made that he was aware of the plans or incidents. His total involvement was the following:

On July 31 Torrens, who had known appellant for a year, went to a bar to enlist appellant's help in purchasing one ounce of cocaine. Appellant replied that he would try to find one of his friends who could supply him with an ounce. In the early morning hours of August 1, Cabrera entered the bar, talked to appellant, and appellant introduced him to the informer, saying that Cabrera could supply him with good quantity and good quality at a good price. Cabrera and the informer then entered a bathroom where the sale of one ounce of cocaine for $1600 was effected. They returned to the bar. Cabrera and appellant again talked with each other. On the following day appellant called the informer and asked if "everything was alright [sic]". The informer replied in the affirmative and asked if "Manny had taken care of him". Appellant said that he had.

The only additional evidence was that on August 2, an agent of the Drug Enforcement Administration, Garcia, met with Cabrera at a hotel in accordance with plans and purchased four and a half ounces (one eighth of a kilogram) of cocaine for six thousand dollars. The agent asked Cabrera about "El Chino", described as appellant's nickname. Cabrera, in the words of the agent, said, "[D]on't worry, I will take care of him." The agent tried to prolong this conversation but Cabrera did not go into any detail.

If appellant were being prosecuted for conspiracy or aiding and abetting in connection with the August 1 sale of one ounce, the government would have a much more compelling case. Appellant undertook to find a supplier for the requested one ounce; he talked with the supplier before and after the sale; which was carried out nearby; he called the informer the next day to ask if all was well and said that the supplier had taken care of him. This might well be sufficient. *Cf. United States v. Cornish*, 491 F.2d 80 (1st Cir. 1974).

The government, however, set itself to a much more ambitious task—to link appellant with others in a conspiracy to sell a quantity some 128 times larger at a corre-

**4**

spondingly higher price to a different purchaser at a different place and at a later time. In deciding whether the government succeeded in accomplishing that task, our role on review is to "determine whether the evidence presented at trial, evaluated in the light most favorable to the government, was enough to permit the jury to decide . . . beyond a reasonable doubt . . that the defendant had the specific intent to violate the substantive statute." *United States v. Mora*, 598 F.2d 682, 683 (1st Cir. 1979), *quoting United States v. Cangiano*, 491 F.2d 905, 909 (2d Cir. 1974).

The government recognizes that sufficient proof of specific intent or knowledge or acquiescence in a larger conspiratorial scheme ordinarily is not supplied by inference from one isolated act. It appropriately quotes *United States v. Magnano*, 543 F.2d 431, 434–35 (2d Cir. 1976), *cert. denied sub nom. DeLutro v. United States*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977), as follows:

"It is only 'when there is no independent evidence tending to prove that the defendant had some knowledge of the broader conspiracy and when the single transaction is not in itself one from which such knowledge might be inferred,' (citation omitted), that the single act is an insufficient predicate upon which to link the actor to the overall conspiracy."

In this case there is no independent evidence that appellant had any knowledge of the conspiracy to distribute eight pounds of cocaine. At most the independent evidence shows that appellant and Cabrera knew each other, and appellant knew that Cabrera could supply "good quantity and quality" cocaine. This evidence suggests nothing about knowledge or intent pertaining to planned future transactions. It simply establishes that appellant knew enough about Cabrera, i. e., that he was a dealer, to introduce the informer to him when the informer asked for his help in purchasing one ounce of cocaine. In particular, there is in the evidence no clue from which one could reasonably infer a specific intent to distribute the eight pounds of cocaine as charged in the indictment.

Thus we are left with the fact of the one ounce transaction itself, which we hold, is also insufficient to support the charged conspiracy. Were we to hold otherwise, and find appellant's aiding and abetting in the sale of the single ounce sufficient to support an inference of the required knowledge and intent, we would have to hold that any person who introduced to a dealer an informer seeking to make a small purchase could be convicted of participation in a conspiracy encompassing whatever other transactions the dealer might be involved in during roughly the same period of time. To hold so would be to read the element of specific intent out of conspiracy.

The government makes one remaining argument—that appellant was "a part of the first alleged overt act performed in furtherance of the conspiracy [and the] rebuttable presumption is that he continued in the conspiracy." This presumption would endure until the last overt act by any of the conspirators unless overcome by affirmative evidence of withdrawal. The defect in this argument is its premise; that the sale of one ounce of cocaine on August 1 is part of a conspiracy extending through August 9 to distribute eight pounds of cocaine. To fault appellant for not having withdrawn from something the government has failed to connect him with would be stunning legerdemain but poor logic and worse law.

The law established in this circuit mandates reversal of this conviction. Basing appellant's membership in a larger conspiracy on such an unrelated earlier act is the mirror image of deeming a defendant's unheralded entry on stage late in the play sufficient to bind him in a conspiracy beginning half a year earlier. *United States v. Izzi*, 613 F.2d 1205 (1st Cir. 1980). The evidence here is no more sufficient to support an inference of knowledge of an agreement to go wholesale than was the evidence sufficient to support the inference of knowledge in *United States v. Mora, supra; United States v. Mehtala*, 578 F.2d 6 (1st Cir. 1978); *United States v. Gabriner*, 571 F.2d 48 (1st Cir. 1978); and *United States v. Francomano*, 554 F.2d 483 (1st Cir. 1977).

*Reversed.*