UNITED STATES of America, Appellee,

v.

Michael A. PICCIANDRA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

A. Russell LUCID, Jr.,
Defendant, Appellant.

Nos. 84–1707, 84–1708.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1986.
Decided March 31, 1986.

Robert H. Astor with whom Odierna, Beaumier & Minardi was on brief, for Michael A. Picciandra.

Edward J. Lee with whom Hale, Sanderson, Byrnes & Morton was on brief, for A. Russell Lucid, Jr.

Robert S. Mueller, III, First Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., was on brief, for U.S.

Before BREYER, Circuit Judge, ALDRICH and ROSENN,* Senior Circuit Judges.

ROSENN, Circuit Judge.

A jury convicted the defendants, Michael Picciandra and Russell Lucid, Jr., of conspiracy to defraud the United States. 18 U.S.C. § 371 (1982). The jury also convicted Picciandra of income tax evasion. 26 U.S.C. § 7201 (1982), and Lucid of aiding and abetting Picciandra in the income tax evasion, 18 U.S.C. § 32 (1982). On appeal, the defendants raise a due process objection based on pre-indictment delays and challenge a number of evidentiary rulings of the district court. Additionally, Lucid challenges two jury instructions. We affirm.

## I. The Facts

In 1974 Picciandra, counselled by his attorney, Lucid, established Natural Enterprises, Inc. (NEI) for the purpose of engaging in real estate ventures. The articles of incorporation designated Lucid's law office as the company's principal office. NEI did not become activated until 1977. Giving the Government the benefit of all inferences in light of the jury verdict, the record establishes that on June 26, 1977, Picciandra participated in smuggling approximately 10,000 pounds of marijuana into Buzzard's Bay, Massachusetts, aboard the yacht MUSCAVADO. On June 29, 1977, the Coast Guard boarded and seized the

* Of the Third Circuit, sitting by designation.

yacht, but did not find Picciandra aboard. Later that summer, Picciandra told Juliette Picciandra, his wife (subsequently divorced and now Julie Davis), that he had received $240,000 from drug smuggling. Beginning in July 1977, Picciandra delivered $112,000 in cash in shopping bags to Lucid at his law offices. Juliette Picciandra delivered an additional $33,660 to Lucid in January 1978. Lucid deposited most of the money in his client trust fund account and disbursed it, on Picciandra's behalf, to purchase real estate, a boat, and an airplane. At trial, Lucid testified that when asked about the source of the money, Michael Picciandra told him, "don't worry, it's legal." Lucid also testified that he consulted a fellow attorney and the Massachusetts Bar Association with respect to his suspicions and was told merely to document the receipt of the money. Julie Davis, however, testified that Lucid knew about the smuggling and agreed to launder the cash through NEI.

The Picciandras discussed their 1977 tax returns with Lucid and apparently agreed to report only $25,000 of income on their personal return, purportedly from Picciandra's fishing business. Lucid communicated with an accountant who prepared Picciandra's personal and corporate returns. Lucid received the returns and sent them to the Picciandras, then living in Maine. They filed the returns. The personal return reported total income of $25,472 from Picciandra's "lobster and fish" business.

Following the Coast Guard seizure of the MUSCAVADO, the Drug Enforcement Agency (DEA) initiated an investigation. DEA Special Agent Francis Dever, acting in the role of a drug dealer, met twice with Picciandra, in December 1977 and June 1978. Dever's report of the 1977 conversation, introduced at the 1984 trial, stated that Picciandra admitted his participation in the MUSCAVADO smuggling venture. On October 31, 1978, the Government filed a complaint in federal court charging Picciandra and three crew members with conspiracy to import marijuana into the United States. Picciandra was arrested but the complaint was later dismissed.

The Internal Revenue Service (IRS) then began to investigate Picciandra for tax violations. On March 3, 1981, it assigned Special Agent Fredheim to investigate Picciandra's tax liability. Between March 24, 1981, and October 22, 1982, Fredheim contacted over sixty witnesses and obtained and analyzed voluminous documents. In the course of his investigation, Fredheim received information that Lucid had represented Picciandra and NEI and had issued checks on their behalf. On September 29, 1981, Fredheim caused three summonses to be issued to Lucid requesting production of records in Lucid's possession pertaining to financial transactions of Picciandra and NEI. Lucid claimed attorney-client privilege, and refused to comply with the summonses. Fredheim requested that summons enforcement proceedings be initiated. On September 7, 1982, the United States district court ordered Lucid to produce any records of Picciandra and NEI that remained in his possession. On September 29, 1982, Lucid made available relevant checks written on his trustee accounts and a summary of relevant deposits.

In April 1982, Julie Davis told Fredheim of Lucid's knowing involvement in Picciandra's activities. On October 15, 1982, Fredheim recommended that Lucid be documented as a subject in the Picciandra investigation for having participated in a conspiracy to defraud the Government by concealing Picciandra's true federal income tax liability for 1977.

After having been indicted in the District of Maine on one count of income tax evasion, Picciandra moved to have the case removed to Massachusetts, his state of residence. The court granted the motion and the Government obtained a superseding indictment in the United States District Court for the District of Massachusetts on April 11, 1984, naming both Picciandra and Lucid as defendants. Count I charged them with conspiring to defraud the United States by concealing from the IRS the $240,000 in cash received from the MUSCAVADO smuggling. Count II charged Picciandra with evading income taxes by omit-

ting the $240,000 from his 1977 return, and Lucid with aiding and abetting this evasion. A jury found the defendants guilty as indicted and they appeal.

On appeal, the defendants raise numerous objections, arguing first that the undue length of the pre-indictment delays violated their due process rights. Second, they raise several evidentiary issues and, finally, Lucid argues that the trial court erred in two of its rulings on the jury instructions. We turn to the first issue, the pre-indictment delay.

## II. Pre-Indictment Delay

The Supreme Court has held that a prosecutor is not obliged to file charges as soon as probable cause exists. *United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977).

> The prosecution has wide discretion in deciding to delay the securing of an indictment in order to gather additional evidence against an individual. That discretion is limited only by the requirement that it not violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions."

*United States v. Ciampaglia*, 628 F.2d 632, 639 (1st Cir.) (quoting *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980). To prove that a delay violated those "fundamental conceptions of justice" a defendant must prove that (1) pre-indictment delay caused substantial prejudice to his right to a fair trial and, (2) the Government intentionally delayed indictment in order to gain a tactical advantage over the accused. *United States v. Marion*, 404 U.S. 307, 324–25, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971); *United States v. Crooks*, 766 F.2d 7, 11 (1st Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 421, 88 L.Ed.2d 362 (1985); *United States v. Marler*, 756 F.2d 206, 215 (1st Cir.1985).

Picciandra and Lucid assert that prejudicial and intentional delay violated their fifth amendment rights to due process. Picciandra was first indicted on November 15, 1983, and he argues that the Government should have commenced tax proceedings against him in 1978, the DEA having learned of the drug conspiracy at that time. As for Lucid, the Government recommended that he be documented as a subject for investigation on October 15, 1982. He was not indicted, however, until April 11, 1984. He asserts that the Government should have begun proceedings in April 1982 when Julie Davis supplied information about his involvement, and possibly as early as July 1981 when the Government could have obtained records directly from the bank at which he maintained his escrow accounts.

■ Defendants argue that the delays had several prejudicial effects. First, they claim that the passage of time caused DEA agent Dever to forget the content of his 1977 report so that the Government introduced the report as past recollection recorded and effectively denied the defendants the right to confront and examine Dever. Second, they note that an informant who was present at the 1977 meeting died before the trial, and, third, that the Government could not produce records of grand jury testimony given by Picciandra after his arrest on drug charges. The defendants would like to believe, but state no basis therefor, that one of these sources might have produced exculpatory evidence.

At the time of the trial, Dever could not remember the substance of his report that detailed a 1977 conversation in which Picciandra admitted his participation in the MUSCAVADO smuggling venture. Over Picciandra's objection, the trial court applied the past recollection recorded exception to allow the Government to read portions of Dever's 1977 report as recorded recollection after he testified that he could no longer remember the contents.

The introduction of Dever's report under the past recollection recorded exception did not legally prejudice the defendants. The Notes of the Advisory Committee on Federal Rules of Evidence 803(5) expressly state that courts accept the hearsay exception

for recorded recollection despite confrontation clause challenges, citing *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). The *United States v. Kelly* court characterized this confrontation clause challenge as "[s]craping the bottom of the barrel." 349 F.2d at 770.

■ The arguments that the death of the informant and the Government's inability to produce Picciandra's grand jury testimony prejudiced the defendants also fail. Because the defendants neither suggest that Picciandra's testimony contained any exculpatory statements nor assert that the informant's testimony would have contained such statements, they do not demonstrate prejudice.

The defendants did not suffer prejudice from any pre-indictment delay and therefore cannot satisfy the prejudice and intent requirements of *United States v. Marion.* We conclude that the district court did not abuse its discretion in holding that the pre-indictment delays did not violate the defendants' fifth amendment rights of due process.

### III. The Evidentiary Issues

#### A. Picciandra's Grand Jury Testimony

■ In early 1979, after the Government dropped drug charges against Picciandra, he testified before a grand jury concerning his smuggling activities. At the 1984 trial on the tax charges, Picciandra demanded the transcripts from the 1979 grand jury proceedings. The Government responded that it could not find the transcript and that it was not aware that one ever existed. Picciandra, alleging that the Government violated Fed.R.Crim.P. 26.2(e) and (f)(3), calling for production of a witness's statement, moved for a mistrial. The court properly denied the motion. Defendant fails to note that the rule expressly excludes the defendant. Fed.R.Crim.P. 26.-2(a).

#### B. The Marital Communications Privilege

■ Picciandra attempted to prevent his former wife from testifying by invoking the marital communications privilege. This traditional common law privilege prohibits one spouse from adversely testifying to confidential communications made by the other during their marriage. *See Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *see, e.g., United States v. Entrekin,* 624 F.2d 597, 598 (5th Cir.1980) (per curiam), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981). The marital communication privilege, it should be noted, is separate and distinct from the privilege of one spouse to refuse to testify adversely against the other spouse, a privilege which the Court has in recent years held the witness-spouse alone could refuse to invoke. *Trammel,* 445 U.S. at 53, 100 S.Ct. at 913. Communications concerning crimes in which the spouses are jointly participating, however, do not fall within the protection of the marital communications privilege. *United States v. Ammar,* 714 F.2d 238, 258 (3d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Entrekin,* 624 F.2d at 598 (citing *United States v. Mendoza,* 574 F.2d 1373, 1381 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978)). The district court found that Julie Davis was a co-conspirator and that the challenged conversations were made in furtherance of the conspiracy to evade income taxes. The privilege, therefore, did not apply to her testimony and her conversations with her former husband, Picciandra, were admissible as an exception to the privilege. Our review is to determine whether this factual finding is clearly erroneous. *Cf. United States v. Jobin,* 535 F.2d 154, 156–57 (1st Cir.1976).

Testimony revealed that Julie Davis participated in discussions regarding laundering the cash proceeds of the smuggling operation and evading income tax liability generated by the operation. She also delivered cash to Lucid on at least one occasion. We conclude that the district court's finding that Julie Davis was a co-conspirator was not clearly erroneous, and that the

district court correctly admitted her testimony as an exception to the privilege barring confidential marital communications.

### C. Admission of DEA Report Under the Past Recollection Recorded Hearsay Exception

■ As explained in part II, *supra,* the passage of time caused DEA agent Dever to substantially forget the content of his 1977 report so that he could do no more than authenticate the report, and the court admitted the report under the past recollection recorded exception. In their pre-indictment delay arguments, the defendants claimed that admission of the report under this exception prejudiced them because it violated their right of confrontation. They also argue that the report was inadmissible because it did not meet the requirements of the past recollection recorded exception. We have plenary power of review to determine whether the district court committed an error of law. *Molerio v. Federal Bureau of Investigation,* 749 F.2d 815, 820 (D.C.Cir.1984).

Picciandra argues that the report should be excluded based on the holding in *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), that law enforcement reports and evaluation reports of government agencies are inadmissible under the exceptions to the hearsay rule. *Oates* addressed the admissibility of a government chemist's official report and worksheet under the business records exception but stated in dictum that, because of confrontation clause problems under the sixth amendment, no law enforcement reports should be admitted under any hearsay exception. *Id.* at 83–84. Two courts, however, have taken exception with the application of *Oates* outside the business records exception. *See United States v. Quezada,* 754 F.2d 1190, 1193 (5th Cir.1985); *United States v. Sawyer,* 607 F.2d 1190, 1192–93 (7th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980). Moreover, *Oates* is contrary to *McGarry v. United States,* 388 F.2d 862 (1st Cir.1967), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1178, 22 L.Ed.2d 455 (1969), in which this court held that the

admission of an IRS agent's record of a conversation with a defendant under the past recollection recorded hearsay exception under circumstances similar to the instant case is not an abuse of discretion. The exception is a discretionary aid in the search for truth and has indicia of trustworthiness. "The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them." Notes of Advisory Committee on Fed.R.Evid. 803(5). *McGarry,* 388 F.2d at 869 n. 8. We conclude that the district court did not err in admitting agent Dever's report made at the time of his conversation with Picciandra.

### D. The Third Party Summonses

■ On August 31, 1981, the IRS invoked 26 U.S.C. § 7602(2) (redesignated as 26 U.S.C. § 7602(a)(2) (1982)) to issue three summonses to Lucid requesting that he produce certain records pertaining to Picciandra and NEI. 26 U.S.C. § 7602 enables the IRS. to investigate a taxpayer by obtaining records that are in the possession of third parties. Lucid did not comply with the summonses and one year later, on September 7, 1982, the district court ordered Lucid to produce any financial records of Picciandra and NEI that remained in his possession.

On May 21, 1984, prior to trial, Lucid moved to discover the date of receipt by the IRS of any allegations of criminal culpability on the part of Lucid. Lucid's argument on his discovery motion in district court was essentially the same as his position on this appeal: that the issuance of the summonses constituted a misrepresentation because it "amounted to an affirmative representation [that] the IRS had no reason to believe any personal criminal activity or complicity on [Lucid's] part was in issue." The district court found that the IRS made no such misrepresentations. Our review is to determine whether this finding is clearly erroneous. *Cf. United States v. Jobin,* 535 F.2d at 156.

Lucid asserts on appeal that the IRS misrepresented its position at two different

times: first, when it applied for the summonses in August 1981, and knew or should have known that the investigation would lead to Lucid, and second, when it continued the summons enforcement process after it had the April 1982 statements of Julie Davis that criminally implicated Lucid. He argues that the misrepresentations denied him his fifth amendment right against compulsory self-incrimination.

Courts that face this argument generally suppress evidence only if the IRS obtained it through "fairly serious *affirmative* misrepresentations." *United States v. Irvine,* 699 F.2d 43, 46 (1st Cir.1983) (emphasis in original). "Indeed, several cases have expressly denied suppression when IRS agents made no affirmative misrepresentations but simply failed to disclose information." *Id.* (citing *United States v. Robson,* 477 F.2d 13 (9th Cir.1973)). *See also United States v. Lehman,* 468 F.2d 93, 105 (7th Cir.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232 (1972).

> No case holds that an IRS agent breaches a constitutional duty when he obtains information merely by failing to state specifically that he is conducting a criminal investigation. And, we see no basis for such a holding in circumstances such as those present here, where any reasonable person would have known from what the agent explicitly did say that a criminal prosecution could well be in the offing.

*Irvine,* 699 F.2d at 46. We are satisfied that the issuance of the summonses did not constitute a representation that possible criminal activity of Lucid would not become an issue at some time in the future.

We now turn to the question whether the district court's enforcement of the summonses after the IRS had evidence that incriminated Lucid constituted a representation that the IRS did not believe Lucid's possible criminality was at issue. The Second Circuit addressed this question in *In re Magnus, Mabee and Reynard, Inc.,* 311 F.2d 12 (2d Cir.1962), where the IRS issued summonses under section 7602 requiring a corporation to produce certain records. The corporation did not comply with the summonses. Ten months later, the Government secured an indictment against the corporations' majority shareholder in order to prevent the statute of limitations from running. The question on appeal was whether the indictment nullified the right of the IRS to enforcement of the summonses. *Id.* at 13–14. The court held that the district court could enforce them, noting that to hold otherwise would encourage litigants to purposefully delay compliance with summonses. *Id.* at 16–17.

In the context of this case, *Magnus* instructs that enforcement of a summons issued before the development of evidence criminally implicating a taxpayer does not constitute a representation that the taxpayer will not subsequently become the focus of a criminal investigation. *Magnus* effectively rebuts both of Lucid's arguments. First, it noted that "to hold that information cannot be obtained under Section 7602 merely because it may be used in criminal proceedings would virtually write that Section out of the statute." *Id.* at 16. Second, it concluded that the "taxpayer has standing to object only if the use of the summons is an impermissible ruse to obtain the taxpayer's books and records or other material or information in violation of the taxpayer's constitutional rights." *Id.* at 17.

In the case at hand, the IRS did not employ the summonses as a ruse to trap Lucid. Neither the summonses nor the petition to enforce them contained any misrepresentation by the IRS investigators. In light of Lucid's role in handling large sums of cash, the observation of this court in *Irvine* that a reasonable person should know that a "criminal prosecution could well be in the offing" is particularly apt. We hold that a district court does not err in refusing to suppress evidence obtained through summonses issued by the IRS before the commencement of any criminal proceedings against the taxpayer or his attorney or the enforcement of such summonses, in the absence of misrepresentations by government agents.

## IV.

### A. The *Maniego* Instruction

 The court in *United States v. Maniego*, 710 F.2d 24 (2d Cir.1983), instructed the jury that an attorney is not held to a higher than normal standard of conduct, or legal obligation, to verify independently the truth of the information given by the client. *Id.* at 28. Lucid argues that Judge Mazzone erred in not giving the *Maniego* instruction in this case, and that the trial judge in fact agreed to give the instruction but then failed to do it.

We review the propriety of instructions to a jury under the abuse of discretion standard. *United States v. Fishbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985). We must "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Id. See also United States v. Hill*, 470 F.2d 361, 365 (D.C.Cir.1972) ("The trial judge has considerable latitude in fashioning instructions to fit the case").

Our reading of the transcript satisfies us that the trial court never agreed to give the *Maniego* instruction. Moreover, *Maniego* does not enunciate the circumstances under which the above instruction is necessary. Nor does Lucid cite any case, including *Maniego*, which mandates that such an instruction must be given. Lucid argues that the instruction was required here because the Government "sought to create the impression appellant was remiss and in essence negligent by not seeking to look behind his client's representation." If the Government had created such an impression, it is possible that the court then should have given the instruction to counter it. We do not reach the question, however, because a review of the trial excerpt relied on by Lucid fails to support his contention. The Government did not try to raise an inference that Lucid should be held to a standard higher than normal, nor did its questions have the effect of raising such an inference. Besides, Lucid's attorney did not object to the questions. We therefore conclude that the district court committed no error and did not prejudice Lucid in refusing to give the requested *Maniego* instruction.

### B. The Conscious Avoidance Instruction

 Judge Mazzone instructed the jury that it could infer from the evidence that "defendant deliberately refused to enlighten or to take notice of a certain fact." Lucid argues that no evidence supported the court's issuance of this instruction.

This instruction is appropriate when a defendant claims a lack of knowledge, the facts suggest a conscious course of deliberate ignorance, *United States v. Cincotta*, 689 F.2d 238, 243–44 (1st Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *Cimpaglia*, 628 F.2d at 642–43, and the instruction, taken as a whole, cannot be misunderstood by a juror as mandating such an inference. *Cimpaglia*, 628 F.2d at 642. The *Cimpaglia* court found a sufficient factual predicate to justify the instruction where defendants whose acts furthered a fraudulent scheme claimed to be "simply associated with [the scheme's originator] and did not realize that they were assisting in the fraudulent schemes." 628 F.2d at 643. The instruction was also appropriate in *Cincotta* where the evidence suggested that the defendant consciously chose not to ask about what he had "reason to believe" he would discover. 689 F.2d at 243.

Testimony in the instant case justifies the court's "conscious avoidance" instruction. Lucid received shopping bags full of cash from Picciandra and his wife. Lucid claimed that he relied on the representation that the bags of cash were attributable to the sale of Picciandra's schooner and that he accepted at face value Picciandra's representation that the cash was "legal." Any reasonable person would have realized that in today's society the bizarre bearing of shopping bags filled with large sums of cash signalled some form of illegal activity. Further, the court formulated the instruction so that the jury knew that it was permitted, but not required, to draw the inference. The district court's "conscious

avoidance" instruction to the jury does not constitute reversible error.[2]

### V.

We accordingly affirm the judgments of sentence imposed on the defendants Picciandra and Lucid.

---

2. The defendants also argue on appeal that the district court abused its discretion in the following respects: (1) in precluding Lucid's counsel from cross-examining Julie Davis on her current address and occupation; (2) in allowing the introduction of summary exhibits by the IRS summary witness; and (3) in failing *sua sponte* to grant a severance to Lucid under Fed.R.Civ.P.

14 after precluding defense counsel from cross-examining Julie Davis on her current address.

We have reviewed the applicable portions of the record and the defendants' legal arguments, and conclude that these objections are wholly without merit and warrant no further discussion.