UNITED STATES of America, Appellee,

v.

Gildardo F. ACEVEDO,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Kenneth ROMAN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

David Roman LOPEZ,
Defendant, Appellant.

Nos. 87–1123, 87–1124 and 87–1125.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1988.

Decided March 11, 1988.

John D. Archetto, Providence, R.I., by Appointment of the Court, for defendant, appellant Kenneth Roman.

John F. Cicilline, Providence, R.I., by Appointment of the Court, with whom Thomas A. Grasso, Pawtucket, R.I., was on brief for defendants, appellants Gildardo F. Acevedo and David Roman Lopez.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for appellee.

Before COFFIN, Circuit Judge,
ALDRICH, Senior Circuit Judge, and
BREYER, Circuit Judge.

COFFIN, Circuit Judge.

A jury found appellants guilty of distribution of cocaine, aiding and abetting distribution, and a related conspiracy charge. Appellants now challenge the district court's refusal to dismiss the indictment because of excessive pre-indictment delay, to grant a judgment of acquittal on the conspiracy charge, and to define the term "constructive distribution" for the jury. Appellants finally challenge the form of a verdict sheet given to the jury to record its verdict. We find no reversible error and therefore affirm the district court.

## I.

"In reviewing denial of a motion for judgment of acquittal, we consider the evidence as a whole, taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom, to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981) (citations omitted). We proceed to examine the evidence against appellants in this light; elsewhere in this opinion we discuss the facts underlying appellants' claim of excessive preindictment delay.

The principal prosecution witness was Officer Daniel Silva of the Warwick, Rhode Island Police Department. Silva testified that on October 21, 1985, he was acting in an undercover capacity as part of a Drug Enforcement Administration (DEA) task force. Early in the afternoon of that day, Silva and a "cooperating individual" were in a car on Dexter Street in Central Falls, Rhode Island when an individual later identified as appellant Kenneth Roman approached them and asked if they were interested in "a sixteenth." (Silva testified that he understood this as a reference to a portion of an ounce of cocaine.) Silva replied that he was interested in an ounce, and Roman instructed the two to drive up the street and wait for him. They did so; Roman joined them a short time later and Officer Silva again expressed interest in an ounce. Roman replied that he had to meet with someone and that Silva and his companion should proceed to nearby Cowden Street and wait for Roman to return. The two drove to Cowden Street where, a few minutes later, Roman arrived in his car. After agreeing on a purchase price of $1,350, Lopez instructed them to follow him to Summer Street.

Officer Silva testified that when the two vehicles arrived on Summer Street, Roman left his car and spoke to an individual later identified as appellant David Lopez. Lopez then approached Silva's car and asked if Silva and his companion knew the location of the Columbia Market and whether they had the $1,350 for the purchase. Officer Silva answered both questions in the affirmative. Lopez then walked away and Roman approached the car to confirm that Silva was sure of how to get there. Lopez and Roman then entered Roman's car and, followed by Silva and his companion, drove to the Columbia Market.

When Officer Silva and his companion pulled up in front of the Columbia Market, Lopez was sitting outside the store; he approached the two in their car and told them to wait a few minutes because someone else would be arriving. Roman then approached the car and gave them the same message. A few moments later, another car pulled into an alley next to the

store and Roman told Officer Silva that this was the person with the cocaine. Roman and Silva then walked over to the newly-arrived car, where Lopez and an un-identified man were talking to the driver, later identified as appellant Gildardo Acevedo. Silva asked Roman who the unidentified individual was, and Roman told Silva to "be cool" and "not to worry about the guy."

Acevedo, the driver, motioned Officer Silva to get into the front passenger seat. Acevedo also motioned Lopez to stand in front of the car and Roman to the rear, which they did. Silva asked Acevedo if he had the "coke," and Acevedo nodded, producing a clear plastic bag containing white powder. Silva opened the bag to examine the powder and feel its texture; he asked if the price was $1,350, and Acevedo nodded. (Officer Silva testified that despite his own attempts to converse, Acevedo did not want to speak.) Silva handed Acevedo $1400, Acevedo handed Silva a $50 bill, and Silva got out of the car. As Silva returned to his own car, Roman walked along with him and asked if he was satisfied with everything; Silva said that he was satisfied. Silva and his companion then drove away; a short time later, Silva performed a field test on the white powder which gave a positive reaction for cocaine. The contents were later found to weigh 28.3 grams, approximately one ounce.

Indictments were returned on September 9, 1986. Count I charged all three defendants with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. Count II charged defendants with distribution of and aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendants' motion to dismiss the indictment on the ground of excessive pre-indictment delay was denied, as was their motion for a judgment of acquittal on the conspiracy charge. The court declined defendant Roman's request to define the term "constructive distribution" for the jury. The court also instructed the jury, without objection, that it would

have a verdict sheet to record its verdict; the sheet instructed the jury to state whether each defendant was guilty or not guilty of the conspiracy charge, the substantive distribution charge, and the aiding and abetting charge. The jury found all three defendants guilty on all three charges, after which defendant Acevedo objected to the use of the verdict sheet. Defendants moved for a new trial, arguing that the evidence had been insufficient on the conspiracy charge and that the verdict sheet was improper. The court denied the motion.

We consider in turn the issues of excessive pre-indictment delay, sufficiency of the evidence on the conspiracy charge, refusal to define "constructive distribution," and use of the verdict sheet.

## II.

█ A prosecutor is not obliged to file charges as soon as probable cause exists. *United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). To prove that a pre-indictment delay violated due process, "a defendant must prove that (1) pre-indictment delay caused substantial prejudice to his right to a fair trial and, (2) the Government intentionally delayed indictment in order to gain a tactical advantage over the accused." *United States v. Picciandra*, 788 F.2d 39, 42 (1st Cir.1986) (citing *United States v. Marion*, 404 U.S. 307, 324–25, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); additional citations omitted).

█ The facts underlying appellants' claim of excessive preindictment delay were developed at a separate hearing as follows. Agent Daniel McCarthy of the DEA testified that he received the bag of white powder from Officer Silva and mailed it to a DEA laboratory in New York on October 23, 1985, two days after the transaction described above. McCarthy heard nothing from the laboratory until ten months later, shortly after August 25, 1986, when the he received a report stating

that the powder contained cocaine. McCarthy testified that he had telephoned the lab once or twice during these ten months to find out when he could expect the test results; he stated that lab personnel told him that they were overworked and would send him the results when they could. McCarthy testified that there were no alternate means of having the substance lab-tested. Upon receiving the positive test results in August of 1986, McCarthy notified the U.S. Attorney, who obtained indictments on September 9, 1986. All three defendants were arrested shortly thereafter, and their trial took place from October 28th through 31st, 1986.

At the separate hearing on the motion to dismiss the indictment, defendant Lopez testified that he remembered where he was on October 21, 1985: working at King Phillip Reel (apparently a business concern) in Pawtucket, Rhode Island from seven to four-thirty, after which he went to his home in Pawtucket. Lopez testified that he remembered nothing about the events which were the basis of the charges against him; he denied that he was anywhere in Central Falls on that day. Defendant Acevedo testified that on the day in question he worked from seven to three, after which he specifically remembered being at home alone. Defendant Roman did not testify as to whether he recalled the events of that day.

Defendants argued below on the basis of this evidence that the ten-month delay between the alleged transaction and the indictment prejudiced their right to a fair trial by impairing their ability to present alibi defenses. The district court rejected this argument, finding that defendants had not shown sufficient prejudice. We agree. There was absolutely no evidence that the defendants' memories were impaired; Lopez and Acevedo specifically remembered being elsewhere at the time of the transaction, and Roman offered no testimony at all on this point.[1] Nor did any of the defendants offer any evidence that the pre-indict-

ment delay prejudiced their ability to locate witnesses who could have corroborated their stories. Absent any showing of prejudice, we need not proceed to consider whether the government intentionally delayed the indictment in order to secure a tactical advantage. The district court acted properly in denying the motion to dismiss the indictment.

### III.

We next turn to the denial of defendants' motion for a judgment of acquittal on the conspiracy count, made at the close of all the evidence. We start with the proposition that "[t]wo types of intent must be proved: intent to agree and intent to commit the substantive offense." *United States v. Flaherty*, 668 F.2d 566, 580 (1st Cir.1981) (citations omitted). The agreement may be proved by circumstantial evidence. *Id.* Considering the evidence as a whole in the light most favorable to the government, along with all legitimate inferences to be drawn therefrom, we are satisfied that a rational trier of fact could have found appellants guilty beyond a reasonable doubt of the conspiracy charge. *Patterson*, 644 F.2d at 893.

Appellants' principal argument is that, at most, they were involved in a single sale, which they claim cannot by itself establish a conspiracy. As support for this proposition they rely on *United States v. DeLutis*, 722 F.2d 902, 905–08 (1st Cir.1983) and *United States v. Izzi*, 613 F.2d 1205, 1209–10 (1st Cir.1980). *DeLutis* and *Izzi*, however, merely held that single purchases were insufficient to tie the defendant purchasers to the *sellers'* drug distribution conspiracies. In both *DeLutis* and *Izzi*, we relied on *United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir.1978), where the Seventh Circuit explained that "[b]ecause the crime of conspiracy requires a concert of action among two or more persons for a common purpose, the mere agreement of one person to buy what another agrees to

---

1. Lopez' statement that he could not remember any of the events underlying the charges is hardly a claim of faulty memory, in view of his denial that he was in Central Falls on the day in question and his specific memory of having been elsewhere.

sell, standing alone, does not support a conspiracy conviction.... 'In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective.'" *Id.* at 1307 (quoting *United States v. Ford,* 324 F.2d 950, 952 (7th Cir. 1963)).

This case, in contrast to *DeLutis, Izzi,* and *Mancillas,* charges a conspiracy among sellers rather than among sellers and buyers. We are offered no explanation, and can see none, of why a single sale of drugs cannot establish a common purpose on the part of the sellers—an intent to agree to distribute the drugs and an intent to distribute them—irrespective of the intent of the buyer. We therefore reject appellants' argument that the evidence of conspiracy was insufficient here because it involved only a single sale.

Appellants also argue that the evidence merely established that Lopez and Roman directed Officer Silva to an individual, Acevedo, who they knew had cocaine for sale. Appellants cite *United States v. Hernandez,* 625 F.2d 2 (1st Cir.1980) for the proposition that a defendant's having directed an individual to another individual known to be selling narcotics cannot by itself support a conspiracy conviction. We need not decide whether *Hernandez* really stands for such a proposition, because here there was uncontroverted evidence that Roman and Lopez did far more than merely refer Officer Silva to Acevedo. Roman actively solicited Silva's business, agreed on a price, and led Silva to Lopez. Lopez confirmed the price, and Lopez and Roman led Silva to the rendezvous with Acevedo. Roman led Silva to Acevedo's car and assured Silva that he need not worry about the unidentified individual talking to Acevedo and Lopez. Roman and Lopez followed Acevedo's apparent instructions to stand guard while the sale was consummated. Roman then accompanied Silva back to his car and assured himself that Silva was satisfied. We think the jury could rationally conclude beyond a reasonable doubt from Roman's and Lopez's integral involvement in the transaction that they, along with Acevedo, had formed the necessary intent to agree and intent to commit the substantive offense.

We note that in *Hernandez,* 625 F.2d at 3, we suggested that a defendant who undertook to find a supplier for a requested one ounce of cocaine, who talked with the supplier before and after the sale, and who called the purchaser the next day to ascertain that all was well and to state that the supplier had taken care of him, might well be found to be part of a conspiracy to distribute cocaine. This case presents strikingly similar facts, and, although it lacks the element of compensation for those who assisted the sale, it presents the additional elements that the assistants negotiated the price and stood guard while the sale was consummated. Roman, moreover, initiated the entire transaction and was able to reassure Silva that the unidentified man with Acevedo was no cause for concern. This was more than enough.

## IV.

◼ In its instructions on both the conspiracy to distribute and the substantive distribution charges, the district court stated that "[t]he term 'distribute' means to deliver a controlled substance to the possession of another person which in turn means the actual, *constructive* or attempted *transfer* of a controlled substance." (Emphasis added.) Defendant Roman asked the court to define the term "constructive distribution" for the jury; the court declined to do so. Roman now argues that this was error. We assume the district court understood Roman to be asking for a definition of "constructive transfer"; we think the refusal to do so was proper.

Roman has not cited any authority establishing that a court must define constructive distribution or constructive transfer. He does acknowledge the holdings of *United States v. Lignarolo,* 770 F.2d 971, 980 (11th Cir.1985) and *United States v. Montiell,* 526 F.2d 1008, 1011 (2d Cir.1975) that the term "distribution" ordinarily need not

be defined because it is within the common understanding of jurors. But Roman argues that the jury here was unable to apply the term as ordinarily used to him, because there was no evidence that he had actual possession of cocaine at any time. He asserts that the district court should have explained that constructive distribution required "the existence of sufficient dominion and control over the drugs" to cause their transfer.

In considering this argument we must " 'determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury.' " *United States v. Picciandra*, 788 F.2d 39, 46 (1st Cir.1986) (quoting *United States v. Fishbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir.1984)). We think that the instructions here met that standard. Although the district court did not define constructive distribution or constructive transfer, it did define "constructive possession" as follows: "A person who although not in actual possession knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." We think the jury would have adequately understood the term constructive transfer, in light of this definition of constructive possession, as involving the power and the intention to cause the transfer

of a thing, either directly or through another person or persons.

We further note that Roman has not explained, nor can we see, how he was prejudiced by the court's refusal to define the term. In our view, explaining to the jury that Roman need not actually have physically transferred the cocaine in order to be found guilty of the substantive offense of distribution could only have increased the likelihood of a guilty verdict. It is remotely possible that the jury, confused by the concept of constructive transfer, might have convicted Roman despite concluding that he had only a highly attenuated connection to the cocaine sale. But we think the risk of this improbable scenario was adequately limited by the court's instruction that "[m]ere presence at the scene of an offense and knowledge that an offense is being committed are not sufficient to establish that the defendant aided and abetted the offense, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator." We therefore find no error in the court's refusal to define constructive transfer.

## V.

Finally, we turn to appellants' argument that the district court erred in submitting to the jury the verdict sheet that we set out in the margin [2]. As to each defendant, the

2.
**VERDICT SHEET**
1. On Count I, conspiracy, we the jury find the
   a) defendant Gildardo F. Acevedo

   _____
   (insert "Guilty" or "Not Guilty" as you find)
   b) defendant Kenneth Roman

   _____
   (insert "Guilty" or "Not Guilty" as you find)
   c) defendant David Roman Lopez

   _____
   (insert "Guilty" or "Not Guilty" as you find)
2. On Count II, knowingly and intentionally distribute 28.3 grams more or less, of a mixture containing cocaine, we the jury find the
   a) defendant Gildardo F. Acevedo

   _____
   (insert "Guilty" or "Not Guilty" as you find)
   b) defendant Kenneth Roman

   _____
   (insert "Guilty" or "Not Guilty" as you find)

c) defendant David Roman Lopez

   _____
   (insert "Guilty" or "Not Guilty" as you find)
3. On Count II, aiding and abetting, as I have described to you, we the jury find the
   a) defendant Gildardo F. Acevedo

   _____
   (insert "Guilty" or "Not Guilty" as you find)
   b) defendant Kenneth Roman

   _____
   (insert "Guilty" or "Not Guilty" as you find)
   c) defendant David Roman Lopez

   _____
   (insert "Guilty" or "Not Guilty" as you find)

_____
                        Foreperson

_____
Date

sheet asked for separate findings of guilt or innocence on (1) the conspiracy charge in Count I of the indictment, (2) the distribution charge in Count II of the indictment, and (3) the aiding-and-abetting charge, also contained in Count II of the indictment. At the close of its instructions, the court explained the verdict sheet to the jury; the court then asked counsel to come to sidebar for their comments on the instructions, and there was no objection to the verdict sheet. When the jury returned from its deliberations, the forewoman read the sheet aloud; the jury had inserted the word "Guilty" in each of the nine blanks.

At this point counsel for Acevedo expressed some confusion and asked to see the sheet. He argued that the jury could not have returned three guilty verdicts as to each defendant when the indictment contained only two counts. The court explained that the distribution and the aiding-and-abetting charges were both contained in Count II. Counsel for Acevedo argued that the verdicts were inconsistent, asserting that a defendant cannot be simultaneously both a principal and an aider-and-abettor. The court stated its view that the verdicts were consistent and denied defendants' motion for a new trial on this ground.

■ We note, first, that appellants did not timely object to the verdict sheet. The court's instructions adequately apprised them of the nature of the sheet, yet they made no objection, despite an opportunity to do so, until after the jury had returned its guilty verdicts. We therefore review only for plain error. *See United States v. Munson,* 819 F.2d 337, 340–41 (1st Cir. 1987). Second, even if appellants' objection could be considered timely, the record before us indicates that they objected not to the sheet itself but on the theory that the verdicts were inconsistent. On appeal, they have changed horses, arguing for the first time that special jury questions are impermissible *per se* in a criminal case.

Again, therefore, we review only for plain error; we will not consider an issue raised for the first time on appeal unless our refusal to do so would abet a gross miscarriage of justice. *United States v. Twomey,* 806 F.2d 1136, 1141 n. 5 (1st Cir.1986).

■ Appellants argue that special jury questions are impermissible in a criminal case on the basis of *United States v. Spock,* 416 F.2d 165 (1st Cir.1969), and *United States v. Southard,* 700 F.2d 1 (1st Cir.1983). We need only consider *Southard,* where we held that the use of a similar verdict sheet was not plain error. *Id.* at 15–16. We think the same is true here.

We note that the risk of a gross miscarriage of justice is even less here than in *Southard* (or for that matter, in *Spock,* although there our review was not confined to plain error).[3] The danger of special jury questions, as we found in *Southard* and *Spock,* is that " '[t]here is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step.' " *Southard,* 700 F.2d at 16 (quoting *Spock,* 416 F.2d at 182). In both *Southard,* 700 F.2d at 12, and *Spock,* 416 F.2d at 168, the jury answered one or more questions favorably to the defendants, thus leaving room to argue that the jury might have been pressured into reaching its ultimate guilty verdict by a step-by-step process.

Here, in contrast, the jury found all three defendants guilty of both the substantive distribution and the aiding and abetting charges. There is thus no suggestion that the jury was led step-by-step to a guilty verdict on either charge.

*Affirmed.*

---

**3.** Our discussion of whether the verdict sheet here led to a gross miscarriage of justice is part of our *plain* error analysis; we do not mean to retreat from our statement in *Spock,* 416 F.2d at 183 n. 41½, that *harmless* error analysis of such verdict sheets is inappropriate.