March 30, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 91-1571

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 GLENN ALLEN,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]
 

 

 Before

 Torruella, Circuit Judge,
 
 Brown,* Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 

 Perry O'Brian, by Appointment of the Court, for appellant.
 
 F. Mark Terison, Assistant United States Attorney, with whom
 
Richard S. Cohen, United States Attorney, and James L. McCarthy,
 
Assistant United States Attorney, were on brief for appellee.

 

 March 30, 1993

 

* Of the Fifth Circuit, sitting by designation. Judge Brown
(now deceased) heard oral argument in this matter, and
participated in the semble, but did not participate in the
drafting or the issuance of the panel's opinion. The remaining
two panelists therefore issue this opinion pursuant to 28 U.S.C.
 46(d).

 

 -2-

 TORRUELLA, Circuit Judge. Appellant Glenn Allen was
 

convicted of conspiracy to possess in excess of 10 grams of LSD,

possession of psilocybin with intent to distribute, and

distribution of psilocybin, in violation of 21 U.S.C. 

841(a)(1) and 846, and 18 U.S.C. 2. Appellant alleges that

insufficient evidence existed to support his convictions and that

the government violated his Fourth Amendment rights. Based on

these allegations, appellant requests a new trial. Because we

find that sufficient evidence supported appellant's convictions,

and that no Fourth Amendment violations occurred, we affirm the

verdict.

 BACKGROUND
 

 Evidence of the following appeared at trial. A United

States postal inspector, assigned to investigate transportation

of illicit drugs through the mail, became suspicious of two

Express Mail package receipts. The receipts were addressed to

Kurt Humphrey in Maine and sent from two locations on the west

coast of the United States. The sender's name on each receipt

coincided with a previously investigated sender. In addition,

the originating addresses were false. The postal inspector

directed the appropriate postmaster in Maine to watch for future

Express Mail packages addressed to Kurt Humphrey from the west

coast.

 Such a package arrived from Oregon on January 11, 1990

at 7:00 a.m. The postmaster alerted the postal inspector one

hour later when the inspector arrived at the New Hampshire

 -2-

office, where he was working that day. The postal inspector

directed the postmaster to hold the package pending further

instruction. Ordinarily, the postmaster would have immediately

notified Humphrey that the package had arrived. The package had

a guaranteed delivery time of 3:00 p.m. that day.

 At 10:00 a.m. in New Hampshire, 7:00 a.m. on the West

Coast, the inspector called the appropriate Oregon office and

learned that the originating address and the sender's name were

fictitious. The inspector then arranged with the Maine state

police for a trained dog to sniff the package for drugs. The dog

was trained to find marijuana, cocaine, hashish, and heroin in

all of their forms.

 When the state police arrived at the post office at

noon, the postmaster closed the office for lunch. He then took

the police officers to his nearby house to conduct the test in

privacy. Four times, the police hid the package in the garage

and sent the dog to find it. Each time, the dog located the

package and indicated the presence of drugs.

 The police presented an affidavit to a local magistrate

describing the test and stating that the package had been sent

from a fictitious address. The magistrate issued a search

warrant at 4:21 p.m. When the police officers opened the

package, they found 11,200 rations of LSD on 112 sheets of

blotter paper. The police then prepared a dummy package with two

sheets of blotter paper in an apparently unopened Express Mail

envelope. Meanwhile, sometime between 11:00 a.m. and 2:00 p.m.,

 -3-

Humphrey checked his post office box, found nothing, and left

without inquiring about the package.

 The next day, Humphrey returned to the post office and

received the dummy package. When Humphrey left the post office,

two police officers followed him. They ultimately stopped him

en-route to appellant's house.

 At trial, Humphrey described appellant's participation

in the scheme, alleging that appellant recruited him to receive

packages and deliver them to appellant for a fee of fifty

dollars. Humphrey also stated that appellant sold him $250 worth

of psilocybin mushrooms. The police later found psilocybin

mushrooms in Humphrey's home and in a barn on appellant's family

property.

 In addition, the police found a money order for $400

from James Paoletti made out to appellant in appellant's home.

Paoletti testified that the money order represented payment for

LSD.

 Appellant moved to suppress the contents of the Express

mail package unsuccessfully. He also lost motions for judgment

of acquittal.

 APPELLANT'S CLAIMS
 

 I. Sufficiency of the evidence

 "The standard of review for sufficiency challenges is

whether the total evidence, taken in the light most amicable to

the prosecution, together with all reasonable inferences

favorable to it, would allow a rational fact-finder to conclude

 -4-

beyond a reasonable doubt that the defendant was guilty as

charged." United States v. Maraj, 947 F.2d 520, 522-23 (1st Cir.
 

1991). Viewing the record in this light, we find sufficient

evidence for appellant's conviction on all three counts.

 First, through testimony from Paoletti and Humphrey,

the government presented sufficient evidence for a rational jury

to conclude that appellant conspired to possess LSD with intent

to distribute it. The following evidence was admitted at trial.

Paoletti sent appellant a $400 money order to buy LSD that

appellant would obtain from the West Coast. (Transcript of Trial

Proceedings at 145). After procuring an Express Mail shipment of

LSD from the West Coast, appellant would pay Humphrey to retrieve

the package from the post office and deliver it to appellant's

home. Id. at 20. Pursuant to a search warrant, police officers
 

searched the package, discovered LSD, and replaced it with a

dummy package. Humphrey retrieved the package, and the officers

arrested him on the way to appellant's home. Id. at 20-21. From
 

this evidence, a rational jury could find appellant guilty of

conspiracy to possess LSD beyond a reasonable doubt.

 Second, sufficient evidence supported appellant's

conviction for distribution of psilocybin. To prove this charge,

it was enough to show that the defendant had the "power and the

intention to cause the transfer . . . either directly or through

another person . . . ." United States v. Acevedo, 842 F.2d 502,
 

507 (1st Cir. 1988). Humphrey testified that (1) when appellant

was in Europe in November 1989, he phoned Humphrey, and Humphrey

 -5-

asked him if he could get some psilocybin, (Transcript of Trial

Proceedings at 34); (2) appellant offered him the psilocybin that

was in the barn at appellant's home, id. at 35; (3) appellant
 

agreed to sell a quarter pound of psilocybin for $250, which

Humphrey would pay when appellant returned from Europe, id.; (4)
 

Humphrey took the psilocybin from the barn, id. at 35-36; and (5)
 

when appellant returned, Humphrey offered him a gun as partial

payment, which appellant took, saying he'd try it to see if he

wanted it, id. at 39. The government also introduced evidence
 

that the police confiscated psilocybin from Humphrey, id. at 37,
 

and from the barn on appellant's property, id. at 90-91. From
 

this evidence, a rational jury could conclude that appellant had

the power and intent to cause the transfer of psilocybin.

 Finally, sufficient evidence existed to support

appellant's conviction for possession with intent to distribute

psilocybin. In order to prove this crime, the government must

establish that the defendant had, possession of a controlled

substance, knowledge of that possession, and the specific intent

to distribute it. 21 U.S.C. 841(a)(1). Constructive

possession will support a conviction and can be established by

circumstantial evidence such as a defendant's ownership or

control over the premises in which the contraband is hidden.

Acevedo, 842 F.2d at 507. Appellant argues that he had no
 

ownership or control over the psilocybin because his family had

access to the barn where it was stored, and because he exercised

no exclusive or mutual control over the part of the barn in which

 -6-

the mushrooms were found. Humphrey testified, however, that

appellant ordered the psilocybin and hid it in the barn,

(Transcript of Trial Proceedings at 28), and that on the same

day, appellant showed him psilocybin mushrooms that he had in a

duffel bag, id. at 28. From this evidence, the jury could infer
 

that appellant owned or controlled the psilocybin in the barn.

 Appellant attacks the credibility of the government's

witnesses for all three charges. He complains that part of

Paoletti's testimony conflicted with a prior made statement and

that Humphrey offered solely conclusory assertions. These are

suitable arguments for the jury, and appellant had ample

opportunity to present them at trial. As the jury chose to

reject them, we must do the same. United States v. Angiulo, 897
 

F.2d 1169, 1197 (1st Cir.) (reviewing court must resolve all

credibility determinations in favor of verdict), cert. denied,
 

498 U.S. 845 (1990).

 II. Fourth Amendment Issues

 Appellant next argues that the district court erred in

denying his motion to suppress the LSD found in the Express Mail

package. Specifically, appellant contends that the detention and

subsequent search of the package violated his Fourth Amendment

right against unreasonable search and seizure because (1) the

detention was not based on a reasonable suspicion that it

contained contraband; and (2) it was unreasonable.1 See United
 

 

1 In his brief, appellant also argued that the police officers
lacked probable cause to search the package because the dogs were
not trained to sniff LSD. At oral argument, however, he

 -7-

States v. La France, 879 F.2d 1, 4 (1st Cir. 1989) (police
 

entitled to delay delivery if delay is based reasonable suspicion

and is reasonably executed). We find, however, that a reasonable

view of the record evidence supports the district court's denial

of the motion. See United States v. Masse, 816 F.2d 805, 809 n.4
 

(1st Cir. 1987) (citing United States v. Veillette, 778 F.2d 899,
 

902 (1st Cir. 1985) (appellate court should uphold district

court's denial of motion to suppress if reasonable view of

evidence supports it).

 The court properly found that reasonable suspicion

supported the package's delayed delivery. The record evidence

shows that the postal inspector has seven years of experience

investigating drug transportation through the mail, and has

investigated between 200 and 300 cases involving drug transport

through Express Mail. (Transcript of Hearing on Defendant's

Motion to Suppress Evidence at 12-13). He grew suspicious of the

package for several reasons. Individuals rarely receive Express

Mail packages, and Humphrey received three in five months. Id.
 

 

abandoned that argument and conceded that the disputed time frame
consisted of that between the arrival of the package and the
sniff test.

 We note that the test did in fact generate probable cause.
Probable cause is judged upon the information known to the
authorities and presented at the time the warrant issues. United
 
States v. Johnston, 784 F.2d 416, 420 (1st Cir. 1986).
 
Information available to the magistrate at this time revealed
that a trained dog had alerted to the presence of drugs in the
package four times. This information gave rise to probable cause
to suspect that the package contained contraband. That the
package later turned out to contain LSD, which the dog was not
trained to find, is irrelevant.

 -8-

at 55. Also, the inspector knew that Humphrey had received

suspicious mailings from the West Coast in the past. Id. at 15.
 

The labels were suspicious because the return addresses differed,

but the handwriting, in his observation, appeared the same. Id.
 

Also, one of the senders had the same name as someone who

previously mailed an Express Mail package containing psilocybin.

Id. From this evidence, the district court found that the
 

inspector had reasonable suspicion to detain the package

initially. When the inspector learned that the sender's address

was fictitious, additional suspicion developed, justifying the

further delay that it took to arrange for the dog sniff test.

 In addition to having reasonable suspicion, the

officials did not unreasonably delay delivery of the package. To

determine the reasonableness of the delay, we review the

diligence of the investigators, the length of detention, and the

information conveyed to the suspect. La France, 879 F.2d at 7
 

(citing United States v. Place, 462 U.S. 696, 709-10 (1983)).
 

 In the present case, the law enforcement authorities

acted diligently. The delay lasted only as long as necessary.

The postmaster promptly contacted the postal inspector to obtain

further information, and the postal inspector then promptly

verified the addresses, waiting only for the appropriate office

to open. Id. at 26-27. When the inspector determined that the
 

addresses did not exist, he arranged for and executed the dog

test. (Transcript of Hearing on Defendant's Motion to Suppress

Evidence at 26-29). No evidence suggested that the law

 -9-

enforcement officials could have acted more swiftly.

 Furthermore, the dog was located at a distance from the

postmaster's home, id. at 91-92; yet, within five hours after the
 

postmaster notified the inspector about the package, the sniff

test was complete. Indeed, sufficient probable cause to search

the package developed two hours before the guaranteed delivery

time, and thus before appellant had a significant possessory

interest. See La France, 879 F.2d at 7 (before guaranteed
 

delivery time, only possessory interest is contract-based

expectancy that package would be delivered on time). The

district court judge properly found the delay reasonable.

 Finally, appellant received no misinformation regarding

his package. Indeed, he never inquired about the package.

Accordingly, we find that the record evidence supports the

district court's denial of the motion to suppress.

 CONCLUSION
 

 Because sufficient evidence supported appellant's

conviction, and appellant's Fourth Amendment rights were not

violated, we affirm appellant's conviction.

 Affirmed.
 

 -10-