UNITED STATES of America, Plaintiff-Appellee,

v.

Myron DiNOVO and Janet DiNovo, Defendants-Appellants.

No. 74–1681.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1975.

Decided July 7, 1975.

Rehearing Denied Aug. 13, 1975.

Certiorari Denied Dec. 8, 1975.

See 96 S.Ct. 449.

John R. Krupa, Harvey, Ill., Arthur J. O'Donnell, Chicago, Ill., for defendants-appellants.

John R. Wilks, U. S. Atty., Charles F. Leonard, Asst. U. S. Atty., Fort Wayne, Ind., Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and PERRY,* Senior District Judge.

SWYGERT, Circuit Judge.

The principal issues in this case concern the adequacy of an affidavit by a federal agent to establish probable cause for the issuance of a search warrant; the sufficiency of the evidence with respect to defendant-appellant Janet DiNovo; and the sufficiency of the evidence with respect to the defendants' intent to distribute the drugs found in their home.

Defendants-appellants Myron DiNovo and Janet DiNovo were convicted after a jury trial of possession with intent to distribute a mixture containing heroin in violation of 21 U.S.C. § 841(a)(1). Myron DiNovo was sentenced to a term of twenty-five years imprisonment and a special parole term of six years. In addition he was fined $25,000. Janet DiNovo was sentenced to a term of twenty-five years imprisonment pursuant to 18 U.S.C. § 4208(a)(2).

On February 1, 1974 various police officers, including agents of the Drug Enforcement Administration traveled to a house trailer located on Trailer Lot 24, 3601 Sheffield, Hammond, Indiana to execute a federal search warrant. Upon arriving the narcotics officers placed the residence under surveillance. Myron DiNovo was observed leaving the trailer and getting into a white Pontiac automobile which he drove across the street and parked alongside the trailer. Janet DiNovo then left the trailer and got into this car. An agent pulled up behind the white car, got out of his automobile and announced to the defendants that he was a police officer, whereupon the defendants' car sped away. After the automobile avoided a different police car and another announced police officer, a high speed chase took place. Eventually the defendants' car slowed down and the defendants were arrested. Janet DiNovo was identified as having been the passenger in the car.

Pursuant to the search warrant the Lot 24 house trailer was searched. In the middle drawer of a bedroom dresser an agent found a paper bag in which there were thirty-nine prophylactics containing approximately two pounds of 7.5 percent pure heroin. In the living room the agents found a briefcase which had fourteen thousand dollars in currency and a brown paper bag containing nine foil packets of heroin. Also in the living room on top of a coffee table were found seven hypodermic syringes, six of which contained heroin, a few empty packets of tinfoil, and an open tinfoil packet that contained heroin. Finally agents found in the bedroom closet two scales, one of which was accurate to twenty-eight hundredths of an ounce and was of the type used for rapid weighing.

I.

Both defendants challenge the constitutionality of the issuance of the search warrant. First they contend that the affidavit in support of the warrant contained multiple hearsay which did not

* Senior District Judge Joseph Sam Perry of the United States District Court for the Northern District of Illinois is sitting by designation.

meet the requirements of *Aguilar* v. *Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We have included the affidavit as an appendix to this opinion. We find no problem with the hearsay statements of the informant in paragraph 4–A. An affidavit for a search warrant can properly include hearsay based on hearsay provided it contains information "relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed." *United States* v. *Carmichael,* 489 F.2d 983, 986 (7th Cir. 1973). Sufficient underlying facts are set forth and the informant's reliability is adequately shown in paragraph 4–B. The reliability of the crucial information contained in paragraph 4–G was established by the personal observations of agent Pastrick also contained in that paragraph. Finally there is the question of the reliability of the informant referred to in paragraph 4–D. It could be argued that the statement is a declaration against penal interest and thus an exception to the hearsay rule. We do not decide this issue since, as is evident from our later discussion, we do not believe this informant's statement need be considered to find sufficient probable cause.

■ Defendants also contend that the warrant was invalid because it was based on an affidavit in which there were material misrepresentations of fact. A full hearing was held on this issue in the district court pursuant to *United States* v. *Carmichael.* It was stipulated that the information in paragraph 4–C was incorrect. Although defendants contend that this was an intentional misrepresentation, the district court found that that agent had not even acted recklessly in regard to the matter and this finding is not clearly erroneous. Therefore there was no basis for suppression under *Carmichael.* Defendants also claim that agent Pastrick's statement in paragraph 4–G was a misrepresentation of what was actually observed. The district court questioned the credibility of Valerie Wild who gave contradictory testimony. Based on the testimony of agent Pastrick we accept the lower court's finding of no misrepresentation.

Finally defendants attack the affidavit on the ground that it was insufficient to show probable cause to search the trailer. In view of our previous discussion, we are confronted with evaluating the question of probable cause on the basis of the following facts: During the week of January 7, 1974 two large plastic bags containing a brown powder were observed in a house at 226 Highland, Hammond, Indiana and Myron DiNovo represented that they contained seven pounds of heroin; as of January 21, 1974 the telephone number for the house at 226 Highland, Hammond, Indiana was listed in the name of Myron DiNovo; this house was vacated shortly after that date; on January 21, 1974 Myron DiNovo was observed leaving and returning to a house trailer on Lot No. 24 at Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana; on February 1, 1974 Myron DiNovo drove from a parking lot where he had just delivered a foil packet of opiate content and received $250 to the house trailer on Lot 24, Sheffield Estates; as of January 25, 1974 the telephone listed in the name of Myron DiNovo was listed for the address at 3601 Sheffield; as of January 25, 1974 the utilities for Lot 24, 3601 Sheffield were listed in the name of Myron DiNovo; as of January, 1974 Myron DiNovo was to receive thirty pounds of heroin; Myron DiNovo had previously been convicted of importing heroin into the United States. The question is whether these facts support a search warrant for the Lot No. 24 trailer.

■ A problem arises because there are no factual assertions in the affidavit that directly indicate that narcotics or narcotics paraphernalia were being kept at the premises to be searched. There was probable cause to assume that Myron DiNovo was "dealing" in narcotics and had control of heroin someplace. The affidavit was also sufficient to allow the conclusion that this trailer was Myron DiNovo's residence. But there was still the difficult question of whether the mere fact that an individual is selling

drugs and has possession of a large quantity of drugs someplace is sufficient probable cause to search his residence. One court has apparently determined that under such circumstances there is probable cause. *Chin Kay* v. *United States,* D.C., 311 F.2d 317 (9th Cir. 1962); *cf. United States* v. *Klapholz,* 17 F.R.D. 18 (S.D.N.Y.1955). *But cf. United States* v. *Flanagan,* 423 F.2d 745 (5th Cir. 1970). In the instant case there are factual assertions in the affidavit which dissipate the critical nature of the problem. From the affidavit it was proper to conclude that Myron DiNovo had been living at 226 Highland and had kept his supply of heroin there. Also there was a basis to believe that when the affidavit was filed Myron DiNovo was no longer living at 226 Highland but instead was living in the trailer on Lot No. 24 in Sheffield Estates. Thus the issue becomes whether there was probable cause to assume that a drug seller who had previously kept drugs in his former residence and was seen returning to his current residence after making a drug sale was still storing narcotics in his residence. We think these additional facts and inferences constituted sufficient probable cause and hold that the warrant was properly issued.

## II.

Defendant-appellant Janet Di-Novo contends that the evidence was insufficient to prove her knowing possession of the heroin. The Government's case is based on the theory of constructive possession, which "means being in a position to exercise dominion or control over a thing." *United States* v. *Holland,* 445 F.2d 701, 703 (D.C. Cir. 1971). "Such dominion and control need not be exclusive but may be shared with others." *United States* v. *Davis,* 461 F.2d 1026, 1035 (3d Cir. 1972). Still, "mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." *Arel-*

*lanes* v. *United States,* 302 F.2d 603, 606 (9th Cir. 1962) (footnotes omitted). Our task, which admittedly is somewhat subjective, is to apply these general propositions to the facts in this case viewed in the light most favorable to the Government and determine whether constructive possession by Janet DiNovo was proved.

The relevant evidence in regard to Janet DiNovo is minimal. She was present when the down payment of $100 was made on the trailer, but Myron and his brother returned alone and paid the $3,200 balance. A January rent payment for Lot No. 24 was made by Myron DiNovo and the electric service on the trailer had been applied for by Myron DiNovo. Janet DiNovo was seen leaving the trailer on Janaury 29, 1974 at approximately 8:50 p. m., whereupon she drove to a residence in Hammond, remained about an hour, drove to a supermarket, bought a few items, and then returned to the trailer. On February 1, 1974 she also was seen leaving the trailer and getting into the car driven by Myron DiNovo that was later involved in the high speed chase. Finally two different witnesses did refer to Janet as Myron's wife.

The Government argues that this amount of evidence is sufficient to prove that Janet DiNovo was in a position to exercise dominion and control over the heroin found in the trailer. It is important to note that, unlike *United States* v. *Davis,* 461 F.2d 1026 (3d Cir. 1972) (relied upon by the Government) Janet DiNovo was not discovered in the immediate area of unconcealed narcotics. Thus her constructive possession must be justified on the basis of her possessory interest in the trailer. There was no evidence to show that she owned the trailer. At best the evidence showed that she was married to Myron DiNovo and lived in the trailer with him. Under the circumstances of this case we think that merely being Myron's wife is not the kind of "special relationship" justifying a finding of constructive possession speculated upon in *United States* v. *Holland,*

445 F.2d 701, 703 (D.C. Cir. 1971). Even if she knew that Myron had possession of this heroin, this does not mean she possessed it. The Government offered no evidence of what type of clothing was in the dresser in which the heroin was found. Nor do we know what was in the portion of the closet where the scales were found. There is no evidence from which to deduce that the heroin was in a part of the trailer which was under the control of Janet DiNovo. Finally, unlike Myron DiNovo who drove the fleeing car, Janet DiNovo's presence as a passenger in the car before and during the time it was involved in the chase cannot be deemed an admission of guilt since she did nothing to facilitate the flight. We therefore hold that the evidence is insufficient to support the guilty verdict returned against Janet DiNovo.

### III.

■ An insufficiency of the evidence issue is also raised in regard to the question of proof of intent to distribute.[1] We think the circumstantial evidence was more than sufficient to support this element of the crime.

In the first place the heroin was discovered in prophylactics which are often used for distribution; $14,000 bound in $1000 packets was also found. Most important was the discovery of the scales, one of which was a rapid weighing scale accurate to twenty-eight hundredths of an ounce. Finally there was testimony that the "street" value of this heroin would range from $80,000 to $240,000 depending upon the method and dosage level of distribution. The introduction of this evidence was objected to on the basis that it was irrelevant and highly inflammatory. On appeal it is claimed that the evidence was so prejudicial that the failure to exclude it constitutes reversible error. We do not agree. Testimony as to value was relevant and admissible on the question of intent to distribute. *United States* v. *Wilkerson,* 478

F.2d 813, 815 (8th Cir. 1973). Any "prejudice" was due only to the fact of the amount of heroin possessed which was the very subject of the crime charged.

Given the quantity of the heroin possessed, its potential value and the other discovered items, especially the scales, we hold that the jury could have properly concluded that the heroin was being possessed for sale purposes rather than personal use.

The judgment of conviction of Myron DiNovo is affirmed. The judgment of conviction of Janet DiNovo is reversed.

### APPENDIX

UNITED STATES DISTRICT COURT

For The
Northern District Of Indiana
Hammond Division

UNITED STATES OF AMERICA

vs.

A WHITE HOUSE TRAILER BEARING A RED, WHITE AND BLUE INSIGNIA WITH THE WORD "SCHULT" ON ITS FRONT END WITH A CANOPY OVER THE SIDE ENTRANCEWAY, OCCUPYING LOT NO. 24 AT SHEFFIELD ESTATES, 3601 SHEFFIELD AVENUE, HAMMOND, INDIANA.

Magistrate's Docket No.
Case No. 74–11M

AFFIDAVIT FOR SEARCH
WARRANT

Before Wilbur J. Glendening, *United States Magistrate,* 49 Muenich Court, Hammond, Indiana, the undersigned being duly sworn, deposes and says:

1. That he is employed as a Special Agent of the Drug Enforcement Administration, and has been so employed by the Drug Enforcement Administration and its predecessor, the Bureau of Narcotics and Dangerous Drugs, for approxi-

---

1. In view of part II of this opinion we are only considering this issue as it relates to Myron DiNovo.

mately four and one-half years, and that he has been assigned to and participated in investigations involving violations of Federal law during that time prohibiting the sale of dangerous drugs, Title 21, United States Code, Section 801, et seq.;

2. That based on said investigation, more particularly described hereinafter, your affiant has cause to believe and does believe that there is being concealed a quantity of heroin in the premises described as a white house trailer bearing a red, white and blue insignia with the word "Schult" on its front end with a canopy over the side entranceway, occupying Lot No. 24 at Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana, and that there is being concealed narcotics paraphernalia and equipment used for distribution of heroin, and twelve $20 bills and one $10 bill in prerecorded United States currency;

3. That your affiant is making this affidavit for the purpose of securing a search warrant in order that a legal search of the above-described premises may be made at any time of the night or day, and that a quantity of heroin which is being maintained for the purpose of distribution, and narcotics paraphernalia and equipment used for distribution of heroin, and money which was the fruits of narcotics sales, in violation of Section 841(a)(1) of Title 21, United States Code, found therein, may be seized and dealt with according to law;

4. That the reason that your affiant has reason to believe and does believe that the above-described contraband evidence and fruits are being concealed in the above-described premises are as follows:

A. That on February 1, 1974, your affiant was advised by Agent Richard Lobes, Metropolitan Enforcement Group, Cook County, Illinois, that during the week of January 7, 1974, a confidential informant advised Agent Lobes that the informant was in a house at 226 Highland, Hammond, Indiana, with Myron DiNovo that week and observed two large plastic bags containing brown powder which DiNovo represented to be seven pounds of heroin. The informant further advised that DiNovo would have thirty pounds of heroin coming in from Mexico;

B. That your affiant was further advised by Agent Lobes that on a prior occasion this informant introduced Agent Lobes to a subject who sold Agent Lobes a quantity of heroin. Agent Lobes further advised your affiant that the informant previously worked with Agent Palmer of the Illinois Bureau of Investigation who represented to Lobes that the informant had given information resulting in several arrests and convictions and that Palmer considered him highly reliable;

C. That your affiant was further advised by Agent Lobes that he determined on January 21, 1974, through Northern Illinois Bell Telephone Company that the telephone number for the house at 226 Highland, Hammond, Indiana, was listed in the name of Myron DiNovo; but that investigation revealed that this address was vacated shortly after that date.

D. That on February 1, 1974, your affiant was further advised by Agent Lobes that on January 20, 1974, Agent Lobes was advised by Officer West, Chicago Police Department, Gang Intelligence Unit, that a confidential informant had advised West that the informant was told by Wayne Wild that Wild was a runner for Myron DiNovo and that Wild told the informant that DiNovo would soon have thirty pounds of heroin;

E. That on February 1, 1974, your affiant was advised by Agent Richard Sebock, Metropolitan Enforcement Group, that on January 21, 1974, Agent Sebock and other Agents followed Myron DiNovo from the house trailer on Lot No. 24 at Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana, to 159th and Woodridge, Harvey, Illinois, where he met Valerie Wild. Valerie Wild was followed to 15722 Willard, Harvey, Illinois, first floor apartment.

Agent Sebock further advised your affiant that this apartment was known to be the residence of Wayne Wild;

F. That your affiant was advised on February 1, 1974, by Agent Thomas Ostrowski, Metropolitan Enforcement Group, that on January 21, 1974, he followed Myron DiNovo from 159th and Woodridge, Harvey, Illinois, to the house trailer on Lot No. 24 at Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana;

G. That on February 1, 1974, your affiant was advised by Agent Patrick Pastrick, Metropolitan Enforcement Group, Cook County, Illinois, that on February 1, 1974, a confidential informant who had been supplied twelve $20 bills and one $10 bill in pre-recorded United States Currency met Valerie Wild at 15722 Willard, Harvey, Illinois, and drove with Valerie Wild to McDonald's parking Lot on Sibley Boulevard in Calumet City, Illinois, where they parked their vehicle next to a greenish Pontiac occupied by Myron DiNovo. The informant advised Agent Pastrick that informant had given the twelve $20 bills and one $10 bill to Valerie Wild who exited the car, went over to DiNovo, handed DiNovo the money, and received a foil packet. Valerie Wild returned to informant's vehicle, delivered the foil packet to the informant. Agent Pastrick further advised that the informant delivered a foil packet of brown powder to Agent Pastrick and Agent Pastrick conducted a Marquis test on the powder and received a positive indication of opiate content. Agent Pastrick further advised that he personally observed the informant and Valerie Wild enter the parking lot, saw Valerie Wild exit the car, go over to the car occupied by DiNovo, hand money to DiNovo, and receive a foil packet;

H. That on February 1, 1974, your affiant was advised by Agent Thomas Ostrowski that he followed the greenish Pontiac driven by DiNovo from the McDonald's parking lot to the house trailer on Lot No. 24 at Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana;

I. That on February 1, 1974, your affiant was advised by Agent Lobes that he determined on January 25, 1974, the telephone listed in the name of Myron DiNovo was listed for the address at 3601 Sheffield, Hammond, Indiana;

J. That on February 1, 1974, your affiant was advised by Agent Pastrick that on January 25, 1974, he determined from Northern Indiana Public Service Company that the utilities for Lot No. 24, 3601 Sheffield, Hammond, Indiana, was listed in the name of Myron DiNovo;

K. That a review of the records for the Chicago Police Department, Chicago, Illinois, indicated that Myron DiNovo was convicted of importing heroin into the United States in United States District Court for the Northern District of Illinois and sentenced to five years probation on July 26, 1972.

Wherefore, your affiant requests that a search warrant be issued to any Special Agent of the Drug Enforcement Administration authorizing him to conduct a search of the above-described premises, known as Lot No. 24, Sheffield Estates, 3601 Sheffield Avenue, Hammond, Indiana, at any time of the night or day, and to search said premises and to take into possession all such things as previously described and found in or on such premises.

/s/ Thomas H. Chown
    Thomas H. Chown
    Special Agent
    Drug Enforcement Administration

Subscribed and sworn to before me this 1st day of February, 1974.

/s/ Wilbur J. Glendening
    Wilbur J. Glendening
    United States Magistrate
    Northern District of Indiana