UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2361

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 RAFAEL ANGEL ZAVALA MALDONADO,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jaime Pieras, Jr., U.S. District Judge]
 

 

 Before

 Torruella, Circuit Judge,
 

 Coffin, Senior Circuit Judge,
 

 and Boudin, Circuit Judge.
 

 

Luis Rafael Rivera for appellant.
 
Jeanette Mercado Rios, Assistant United States Attorney, Criminal
 
Division, with whom Guillermo Gil, United States Attorney, and Jose A.
 
Quiles-Espinosa, Senior Litigation Counsel, were on brief for the
 
United States.

 

 April 22, 1994
 

 BOUDIN, Circuit Judge. On July 2, 1992, a jury
 

convicted Rafael Angel Zavala Maldonado ("Zavala") of

possession of cocaine with intent to distribute, in violation

of 21 U.S.C. 841(a)(1).1 On appeal, Zavala argues that

the evidence was insufficient to support the conviction and

that defense counsel's closing argument was improperly

hampered by objections from the prosecutor. For the reasons

set forth, we affirm.

 I.

 The first ground of appeal requires an understanding of

the evidence and, given the conviction, we recite the

evidence in the light most favorable to the government.

United States v. Maraj, 947 F.2d 520, 522-23 (1st Cir. 1991).
 

In January 1992, Ruben de los Santos ("Santos"), a seaman

serving on board the M/V Euro Colombia, was in the port of

Cartagena, Colombia. There, a drug dealer gave Santos

sixteen packages of cocaine, amounting to a total of eight

kilograms, and asked Santos to deliver them as instructed

when the ship docked at the port of Ponce, Puerto Rico. 

 Santos had earlier been approached by American law

enforcement agents attached to the Customs Service, and he

accepted the cocaine in Cartagena with the approval of the

 

 1The jury acquitted Zavala of two other charges--
importing cocaine into the United States, 21 U.S.C. 952,
and using a telephone to commit or facilitate the possession
offense, 21 U.S.C. 843(b)--and these counts require no
further discussion.

 -2-

agents, who intended to track the drugs to their destination.

Santos kept the drugs hidden during the voyage and, on

arriving in Ponce, conferred immediately with the agents.

Shortly thereafter, Santos under surveillance by federal

agents and cooperating local police, went to the Hotel Melia

in Ponce and asked at the front desk for Mr. Palestino.

These last two steps complied with the instructions given to

Santos in Catagena, by the dealer who had given him the

cocaine, to deliver it to Palestino, at the Hotel Melia in

Ponce.

 When the clerk called from the desk to the room

registered to Palestino, the defendant Zavala appeared and

gestured to Santos to follow him to room 302. There Santos,

who was carrying the cocaine in a bag, told Zavala that he

had the drugs to be delivered to Palestino. Zavala said that

he was a friend of Palestino and that Palestino would come to

the hotel. Using a cellular telephone, Zavala then placed a

call, purportedly to Palestino. Then at Santos' urging

Zavala called a second time to ask Palestino to come quickly.

Zavala asked Santos if they could put the cocaine in another

hotel room, saying that he (Zavala) had other friends in the

hotel, but Santos refused.

 As time passed and Palestino still did not arrive,

Santos became increasingly anxious and he proposed to Zavala

that they go out of the room for a soda. Zavala agreed,

 -3-

Santos placed the bag with the cocaine in a closet or

dressing room in room 302, and the two men left room 302 and

entered the corridor. As they went down the stairs, the

supervising customs agent detained them. When Santos

explained that Palestino had still not arrived, Zavala was

taken back to room 302 in custody, accompanied by Santos and

one or more agents. There were several more calls to the

room purportedly from Palestino, two or three on the cellular

telephone and one on the hotel telephone; in each case Santos

told the caller that Zavala was out or otherwise occupied.

 Shortly after the final call, the operation came to an

end. Law enforcement agents, it appears, had seen a car,

with the driver using a cellular telephone, circling around

the hotel. The driver then parked and went into the hotel.

He proceeded with another individual to one of the hotel

rooms and entered. When agents then knocked on the door of

this room, the individuals inside exited through a window.

After a chase they were caught, and a search of their car

yielded a loaded nine millimeter pistol and $6,305 in cash.

 This final episode was described in testimony at the

trial. So far as we know, neither the driver nor the other

man with him was charged. Possibly the police thought that

the evidence was not quite strong enough to prove their

participation in the drug deal. Zavala, however, was charged

 -4-

as previously described, and convicted on one count:

possession with intent to distribute.

 II.

 Zavala's primary claim is that an acquittal should have

been ordered on grounds of insufficient evidence to prove

possession. We begin by noting that on this record Zavala

was surely guilty of a closely-related offense, namely,

conspiracy to possess drugs with intent to distribute them.

21 U.S.C. 841, 846. An agreement with the absent

Palestino is readily inferred from Zavala's statements and

the telephone calls, and the object of the agreement--

transferring a dealer-sized quantity of cocaine to Palestino-

-is no less apparent. A slightly more inventive offense

would be a charge of aiding and abetting Palestino's attempt
 

to possess with intent to distribute, under 18 U.S.C. 2,

841. See, e.g., United States v. Kottmyer, 961 F.2d 569 (6th
 

Cir. 1992).

 But Zavala was not charged with conspiracy, or with

aiding and abetting an attempt, nor did a jury convict him of

such crimes. The formalities of indictment and jury trial

are prescribed by the Constitution. U.S. Const., Amends. V,

VI. Further, given that these offenses were not charged, it

is hardly sufficient to say that this record contained
 

evidence to support such a conviction for such an offense.

We do not know what evidence the record might contain if the

 -5-

defendant had been given notice that he was charged with a

quite different offense (say, conspiracy) instead of, or in

addition to, the offense charged (here, possession). 

 Thus the conviction for possession can stand only if a

reasonable jury could find that Zavala did possess the

cocaine within the meaning of 21 U.S.C. 841. If the

statute used the term "possess" as a lay juror might

understand it prior to instructions from the judge, it might

be a stretch to say that Zavala "possessed" the cocaine in

the bag. There is no evidence that he even touched the bag

or saw the cocaine or that he was ever alone in the room with

it or that he had a practical opportunity to remove it from

the hotel. These facts explain why Zavala's main argument on

appeal is that his relationship to the cocaine cannot be

deemed "possession."

 The difficulty with the argument is that the concept of

possession in the drug statute comes freighted with a history

of interpretation. Congress was here concerned not with

"possession" in a narrowly focused situation (e.g., actual
 

possession of a weapon on an aircraft) but with possession of

drugs incident to their distribution. There is every reason

to think that Congress wished to cast its net widely so that,

assuming mens rea, a defendant proximately associated with
 

the drugs would be reached by the statute. The prevailing

 -6-

interpretation of "possession," in the framework of the drug

statutes, reflects that broad reach. 

 Under settled law, "possession" includes not merely the

state of immediate, hands-on physical possession but also

"constructive" possession, including possession through

another, and joint as well as exclusive possession. Further

these concepts can be combined so that, for example, "joint

constructive possession" is quite as bad as having the drugs

exclusively in one's own pocket. E.g., United States v.
 

Batista-Polanco, 927 F.2d 14, 18-19 (1st Cir. 1991). These
 

concepts of constructive and joint possession are almost

uniformly reflected in both decisions2 and in standard

instructions.3 

 "Constructive" possession is commonly defined as the

power and intention to exercise control, or dominion and

control, over an object not in one's "actual" possession.

E.g., United States v. Acevedo, supra, 842 F.2d at 507. The
 

"constructive possession" label may confuse jurors at first--

drug trial juries routinely ask to be reinstructed on the

definition of possession--but the underlying idea is

 

 2See, e.g., United States v. Akinola, 985 F.2d 1105,
 
1109 (1st Cir. 1993); United States v. Vargas, 945 F.2d 426,
 
428 (1st Cir. 1991); United States v. Acevedo, 842 F.2d 502,
 
507 (1st Cir. 1985).

 3E. Devitt, C. Blackmar, K. O'Malley, 2 Federal Jury
 
Practice and Instructions, Criminal 54.08, at 906 (1990)
 
(collecting cases); L. Sand, J. Siffert, W. Loughlin, S.
Reiss, 2 Modern Federal Jury Instructions 56-9 (1992) (same).
 

 -7-

important and not so difficult to grasp. Courts are saying

that one can possess an object while it is hidden at home in

a bureau drawer, or while held by an agent, or even while it

is secured in a safe deposit box at the bank and can be

retrieved only when a bank official opens the vault. The

problem is not so much with the idea as with deciding how far

it should be carried.

 Here, we think is at least arguable that Zavala was not
 

shown to possess the drugs while he and Santos were in the

room together. Santos apparently had exclusive control of

the bag during this period. It contained drugs for which he

had not been paid; Zavala was not the named person to whom it

was to be delivered; and Santos refused Zavala's suggestion

that the bag be entrusted to Zavala's friends in another

room. If the agents had broken into the room and arrested

Zavala at this point, a directed verdict of acquittal might

have been required.

 But once both parties departed from the room leaving the

drugs inside, the situation altered. It is not that Zavala

got closer to the drugs--indeed, he moved further away from

them--but rather that two other circumstances changed:

first, Santos surrendered his actual possession of them; and

second, with the acquiescence of both parties, the drugs were

secured in Zavala's room. In the context of this case, we

think that a jury could then find both requisites of

 -8-

constructive possession: that Zavala had sufficient power to

control the drugs and an intention to exercise that power.

 Turning first to the power to exercise control, we begin
 

with the fact that the drugs were left in Zavala's room with

his knowledge and consent while Zavala was awaiting the

arrival of an accomplice to pay for them. It is fair to

describe the location as Zavala's hotel room because he was

effectively in occupation and the jury could reasonably infer

that he could return there at will. The evidence showed that

the room, although registered in Palestino's name, had been

lent to two occupants. It was Zavala who emerged when Santos

arrived at the hotel and the room was called; and it was

Zavala who took Santos to the room to await "his friend"

Palestino. 

 The location of drugs or firearms in a defendant's home

or car is a common basis for attributing possession to the

defendant.4 This is so even if the residence or room is

shared by others. E.g., United States v. Garcia, 983 F.2d
 

1160, 1164 (1st Cir. 1993). The cases do not say that

possession is automatic but rather that the location of the

object in a domain specially accessible to the defendant can

 

 4See, e.g., United States v. Wight, 986 F.2d 1393, 1398
 
(1st Cir. 1992); United States v. Echeverri, 982 F.2d 675,
 
678 (1st Cir. 1993); United States v. Chapdelaine, 989 F.2d
 
28, 34 (1st Cir. 1993), cert. denied, 114 S. Ct. 696 (1994).
 

 -9-

(at least where knowledge is admitted or inferred) be enough

to permit the jury to find possession.

 Admittedly, Zavala's power to control in this case was

diluted because Santos had not yet been paid and might well

have resisted any attempt by Zavala to return to the room and

carry away the drugs. But by the same token a jury could

infer that drugs now stored in Zavala's hotel room, awaiting

transfer to Zavala's accomplice, were at least as much within

Zavala's power to control as within Santos' power. If each

had an effective veto over the other, it would still be joint

possession. Two drug dealers with cocaine in the back seat

of their car might both possess it even though neither would

let the other out of sight. Cf. United States v. Wight,
 

supra, 968 F.2d at 1398 (weapon in car given to one defendant
 

"possessed" by the other where in reach of both). 

 The issue of intention is quite as important as the
 

issue of power. Someone might have effective power over

drugs simply because they were located within reach while

their true owner was temporarily absent; but if such a person

had power over the drugs (say, as a temporary visitor to the

room in which they were located) but had no intention to

exercise that power, there might still be no crime. Here,

Zavala's connection with the drugs stored in his hotel room

was not at all innocent: the drugs were stored there for the

 -10-

purpose (so far as Zavala knew and intended) of facilitating

their transfer to his accomplice, Palestino.

 In many cases, intention and knowledge are inferred

solely from the location of the drugs in an area to which the

defendant has a priority of access. Here, Zavala's state of

mind is established by independent evidence: his statements

that Palestino would be there soon, his suggestion that the

drugs be stored temporarily in another room, apparently with

his confederates; and by the cellular telephone calls by

Zavala and to him seemingly from Palestino. No reasonable

jury could have had any doubt that Zavala was there to assist

in the transmission of the drugs lodged in his room.

 Assuming Zavala's guilty mind, it might still be argued

that his precise intention was to aid in the storage and

transfer of the drugs but not to "control" the drugs. We

think this is too fine a distinction. Defendant's intention

to have the drugs stored in his room, incident to their

intended transfer to a confederate, seems to us an intention

intimately related to his power to control the drugs. If a

jury finds this to be constructive possession, we do not

think that it has stretched the concept too far or betrayed

the intention of Congress.

 Finally, it is beside the point that Zavala's

"possession" in the hallway was extremely brief and that

Zavala probably could not have escaped with the drugs because

 -11-

of the police surveillance. That the police are present and

ready to frustrate distribution does not make possession of

drugs any less a crime, and a minute of possession is as much

an offense as a year of possession. See Santiago v. United
 

States, 889 F.2d 371, 376 (1st Cir. 1989). If Palestino
 

himself had arrived and Santos had handed him the bag, he

would be guilty of possession even if the police had burst

into the room sixty seconds later. The completion of the

crime does not require that the defendant have a sporting

chance. 

 III.

 We turn to Zavala's other main claim of error on this

appeal. Zavala contends that the prosecutor so often

interrupted the defense summation with objections as to

constitute misconduct and to prevent the jury from hearing

the defense's closing argument. We have reviewed the

complete transcript of defense counsel's summation and

conclude that misconduct did not occur nor was the defense

summation seriously impaired.

 It is quite true that the prosecutor's objections were

numerous. Zavala's brief claims that 20 objections were made

in an argument that covered 37 transcript pages. The

government's brief may also miss the mark by arguing that the

claim now made was waived because not argued to the district

court: defense counsel did state, after a number of

 -12-

objections from the prosecutor, "I have an objection to the

continuous interruptions." This is the same argument now

renewed on appeal.

 But if the objection was preserved, it was also largely

answered by the trial judge's rejoinder to defense counsel:

"Well, then you behave better. Stick to the facts before the

Court and before the jury and you won't have any

interruptions." The fact is that most of the objections

ruled on by the judge were sustained on the ground that the

defense counsel was arguing facts outside the record,

misstating evidence, or misstating the law. Unless the trial

judge was mistaken in his rulings, defense counsel himself

provoked many of the interruptions.

 We have looked at both the rulings and the objections.

The former were generally well within the district court's

discretion, and most of the latter were at least arguable.

For example, speaking of Santos, Zavala's counsel said to the

jury: "Remember that [the confidential informant] is the

person that traditionally he's a distrusted individual

because he can work always as a double agent." Many

prosecutors would have let this pass; but here the prosecutor

objected ("Objection, your Honor. Going outside the record

"traditionally not to be trusted."), and the judge sustained

her objection on the ground that it was not a reasonable

inference from the evidence.

 -13-

 What inferences can arguably be drawn from specific

evidence is often a matter of degree and of judgment. Trial

judges themselves differ in their approaches, and "how far

you can go" with a particular judge is the kind of lore that

counsel collect and pass on to each other. Here the

prosecutor operated on a hair trigger, and the trial judge

was reasonably strict in governing the closing argument. But

the fact is that there was no evidence as to the general

character of confidential informants, nor any evidence to

suggest that Santos was dishonest or a double agent.

 Without recounting each objection, we think that the

prosecutor was right or arguably right often enough to

foreclose any suggestion that her aim was to impede the

defense; put differently, the defense summation provided some

basis for legitimate complaint. The trial judge's rulings,

some of which favored the defendant, appear eminently

reasonable. Finally, based on a reading of the entire

defense summation, it seems to us that--despite some

interruptions--the essence of counsel's argument for

acquittal was thoroughly conveyed to the jury.

 Affirmed.
 

 Dissent follows.

 -14-

 COFFIN, Senior Circuit Judge (dissenting). I believe
 

the court errs by expanding the definition of "constructive

possession" beyond what is supported by the relevant caselaw,

stretching the statutory reach of "possession" under 21

U.S.C. 841(a)(1) dangerously and unnecessarily far.

 My colleagues concede that it is at least arguable that

Zavala was not shown to possess the drugs while he and Santos
 

were in the room together; and that had the agents broken

into the room and arrested Zavala at this point, a directed

verdict of acquittal might have been required. They contend,

however, that once Zavala, on Santos' suggestion, locked the

drugs in his hotel room while the two men went to get a

drink, Zavala "possessed" the drugs, by virtue of the facts

that he had yielded actual possession of the drugs, and that

he had priority of access to the room in which they were

stored. 

 The court reaches this conclusion by relying on an

interpretation of "constructive possession" which I cannot

help thinking is both incorrect and overbroad. "Constructive

possession," as the majority properly states, is established

by showing that a person knowingly had the power and
 

intention at a given time to exercise dominion and control
 

over an object, either directly or through others. See
 

United States v. Acevedo, 842 F.2d 502, 507 (1st Cir. 1988)
 

(emphasis added). The court, in turn, defines "power" in

physical terms: in its view, the requisite "power" exists if

 -15-

the contraband is in a location specially accessible to a

defendant, such as in one's home, hotel room, or car, or

located within his or her reach.

 I am persuaded that this reliance on physical power of

access understates the law's requirements. Although, as the

court points out, a lay person's understanding of

"possession" is not helpful, I cannot so easily sidestep our

and other courts' use of the word "dominion," which connotes

ownership or a right to property. Black's Law Dictionary 486
 

(6th ed. 1990).

 More importantly, in this and other circuits, the

caselaw supports a reading of "power" as the right or
 

authority to exercise control, or dominion and control, over
 

something not in one's actual possession. See United States
 

v. Ocampo-Guarin, 968 F.2d 1406, 1410 (1st Cir. 1992); United
 

States v. Latham, 874 F.2d 852, 861 (1st Cir. 1989); United
 

States v. Lamare, 711 F.2d 3, 5-6 (1st Cir. 1983); see also
 

United States v. Manzella, 791 F.2d 1263, 1266-67 (7th Cir.
 

1986) (Posner, J.) (defendant "must have the right (not the

legal right, but the recognized authority in his criminal

milieu) to possess [the drugs] . . . . Mere association with

those who possess the drugs is not good enough."); United
 

States v. Tolliver, 780 F.2d 1177, 1183 (5th Cir. 1986),
 

vacated and remanded on other grounds, 479 U.S. 1074 (1987);
 

United States v. Reese, 561 F.2d 894, 898 n.8 (D.C. Cir.
 

1977). 

 -16-

 For example, in Ocampo-Guarin, we found sufficient
 

evidence of "power" to establish constructive possession of a

suitcase and the cocaine inside it, where the defendant

carried baggage claim tickets "which represented her legal

right to reclaim the luggage." 986 F.2d at 1410. Similarly,

in United States v. Lamare, we upheld a finding of
 

constructive possession of a firearm that had been left as

collateral for a towing charge owed by the defendant, because

the defendant "could have taken actual possession of the

pistol at any time by paying the towing charge . . . and

intended to do so." 711 F.2d at 5-6. 

 The fact that contraband is located in a place specially

accessible to a defendant may be sufficient to establish a

defendant's power to exercise dominion or control over it,

and thus support a finding of constructive possession, if

there is a showing that the defendant has the right or

authority to exercise control over the object at issue, or if

the record is silent as to his right or authority over the

contraband. But here the very facts militating against a

finding of constructive possession while Santos and Zavala

were in the room together -- the fact that the drugs had not

been paid for, the fact that Zavala was not the intended

recipient, and Santos' refusal to follow Zavala's suggestion

to transfer them to another room -- effectively refute any

presumption that Zavala had any claim on the drugs. 

 -17-

 None of the cases cited by the majority support the

conclusion that, where knowledge is admitted or inferred, the

location of contraband in a place specially accessible to a

defendant, without more, is sufficient to establish

constructive possession. For example, in United States v.
 

Echeverri, 982 F.2d 675, 678 (1st Cir. 1993), it was the
 

"totality of the circumstances" -- the fact that drugs and

drug paraphernalia were found in plain view, only four feet

from the defendant himself, together with the fact that the

contraband was found in his apartment -- that persuaded the

court that the evidence was sufficient to support a finding

of constructive possession. And in United States v.
 

Chapdelaine, 989 F.2d 28, 33-4 (1st Cir. 1993), the court
 

found defendant in constructive possession of bullets found

in his bedroom closet based, in part, on the fact that they

matched those in a firearm found in defendant's actual

possession.

 In United States v. Wight, 968 F.2d 1393, 1397 (1st
 

Cir. 1992), the single case cited by the majority that

approaches the situation before us, a jury convicted Wight,

the passenger in a van in which a pistol was found between

the driver's and the passenger's seat, of possessing the

pistol during the drug trafficking crime, but acquitted the

driver of the firearm possession charge. We upheld the

finding of Wight's constructive possession of the firearm,

noting that based on evidence of Wight's leading role in the

 -18-

drug transaction, "[i]t was reasonable for the jury to infer

that he, and not [the driver], was in charge of the operation

and, as such, exercised control over [the driver], the van,

its contents, and the firearm." Id. at 1398. 
 

 I find more apposite the Seventh Circuit's decision in

United States v. DiNovo, 523 F.2d 197 (7th Cir. 1975). In
 

DiNovo, the court reversed a wife's conviction for possession
 

of heroin, notwithstanding her cohabitation with her husband

in a trailer where 2 pounds of heroin and other drug

paraphernalia were found. Id. at 201-02. The court found
 

that even if the wife knew of her husband's drug possession,

this did not mean that she possessed the drugs, absent a

showing of her right to exercise control over them. Id. 
 

 To the extent that the court jettisons all idea of legal

right or practical claim to the contraband and assesses

"power" in terms of physical capacity to seize, it vastly

widens the concept of constructive possession. Contraband

stored in the locked box of a another person could be found

within the power of a defendant skilled in the use of lock

picking or explosives. Or, in a case like Wight, the finding
 

as to constructive possession would turn on whether the

driver was bigger and tougher than the passenger.

 The same weakness affects the court's reasoning as to

the presence of intent to exercise dominion over the drugs.

The particular intent is not, as the court would have it, to

facilitate transfer of the drugs to their intended recipient,

 -19-

his presumed associate Palestino. The required intent is

that defendant intends to exercise his claim of dominion over

the drugs, i.e., to take control for himself. So the court,

inmy view, stretches thecontours of both"power" and "intent."

 Finally, we should remember why we are of divided views

about the propriety of extending the scope of constructive

possession beyond that of any apposite authority. It is

because, as the court correctly notes, Zavala could have been

charged with conspiracy to possess drugs with intent to

distribute them, or with aiding and abetting Palestino's

attempt to possess with intent to distribute. But Zavala was

not so charged; and the mere fact that guilt is in the air

should not allow us to extend the reach of the criminal

possession statute in these circumstances. There needs to be

some meaningful distinction between the crime of conspiracy

to possess, and possession itself. The rule of the present

case, allowing the government to prove constructive

possession simply by having a confidential informant deposit

contraband in a hotel room shared with a target, and then

leave the room with this person, with the arresting officers

waiting until the door shuts, would erode any such

distinction.

 I am uncomfortable in taking this significant step --

particularly where the purpose served is to bail out a

maladroit prosecution. I therefore respectfully dissent.

 -20-