UNITED STATES of America, Appellee,

v.

Rafael Angel ZAVALA MALDONADO, Defendant, Appellant.

No. 92–2361.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1993.

Decided April 22, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 28, 1994.

---

Luis Rafael Rivera, Hato Rey, PR, for appellant.

Jeanette Mercado Rios, Asst. U.S. Atty., Criminal Div., with whom Guillermo Gil, U.S. Atty., and Jose A. Quiles–Espinosa, Sr. Litigation Counsel, Hato Rey, PR, were on brief, for the U.S.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

On July 2, 1992, a jury convicted Rafael Angel Zavala Maldonado ("Zavala") of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] On appeal, Zavala argues that the evidence was insufficient to support the conviction and that defense counsel's closing argument was improperly hampered by objections from the prosecutor. For the reasons set forth, we affirm.

## I.

The first ground of appeal requires an understanding of the evidence and, given the conviction, we recite the evidence in the light most favorable to the government. *United States v. Maraj*, 947 F.2d 520, 522–23 (1st Cir.1991). In January 1992, Ruben de los Santos ("Santos"), a seaman serving on board the M/V Euro Colombia, was in the port of Cartagena, Colombia. There, a drug dealer gave Santos sixteen packages of cocaine, amounting to a total of eight kilograms, and asked Santos to deliver them as instructed when the ship docked at the port of Ponce, Puerto Rico.

Santos had earlier been approached by American law enforcement agents attached to the Customs Service, and he accepted the cocaine in Cartagena with the approval of the agents, who intended to track the drugs to their destination. Santos kept the drugs hidden during the voyage and, on arriving in Ponce, conferred immediately with the agents. Shortly thereafter, Santos under surveillance by federal agents and cooperating local police, went to the Hotel Melia in Ponce and asked at the front desk for Mr. Palestino. These last two steps complied with the instructions given to Santos in Catagena, by the dealer who had given him the cocaine, to deliver it to Palestino, at the Hotel Melia in Ponce.

When the clerk called from the desk to the room registered to Palestino, the defendant Zavala appeared and gestured to Santos to follow him to room 302. There Santos, who was carrying the cocaine in a bag, told Zavala that he had the drugs to be delivered to Palestino. Zavala said that he was a friend of Palestino and that Palestino would come to the hotel. Using a cellular telephone, Zavala then placed a call, purportedly to Palestino. Then at Santos' urging Zavala called a second time to ask Palestino to come quickly. Zavala asked Santos if they could put the cocaine in another hotel room, saying that he (Zavala) had other friends in the hotel, but Santos refused.

As time passed and Palestino still did not arrive, Santos became increasingly anxious and he proposed to Zavala that they go out of the room for a soda. Zavala agreed, Santos placed the bag with the cocaine in a closet or dressing room in room 302, and the two men left room 302 and entered the corridor. As they went down the stairs, the supervising customs agent detained them. When Santos explained that Palestino had still not arrived, Zavala was taken back to room 302 in custo-

1. The jury acquitted Zavala of two other charges—importing cocaine into the United States, 21 U.S.C. § 952, and using a telephone to commit or facilitate the possession offense, 21 U.S.C. § 843(b)—and these counts require no further discussion.

dy, accompanied by Santos and one or more agents. There were several more calls to the room purportedly from Palestino, two or three on the cellular telephone and one on the hotel telephone; in each case Santos told the caller that Zavala was out or otherwise occupied.

Shortly after the final call, the operation came to an end. Law enforcement agents, it appears, had seen a car, with the driver using a cellular telephone, circling around the hotel. The driver then parked and went into the hotel. He proceeded with another individual to one of the hotel rooms and entered. When agents then knocked on the door of this room, the individuals inside exited through a window. After a chase they were caught, and a search of their car yielded a loaded nine millimeter pistol and $6,305 in cash.

This final episode was described in testimony at the trial. So far as we know, neither the driver nor the other man with him was charged. Possibly the police thought that the evidence was not quite strong enough to prove their participation in the drug deal. Zavala, however, was charged as previously described, and convicted on one count: possession with intent to distribute.

## II.

Zavala's primary claim is that an acquittal should have been ordered on grounds of insufficient evidence to prove possession. We begin by noting that on this record Zavala was surely guilty of a closely-related offense, namely, conspiracy to possess drugs with intent to distribute them. 21 U.S.C. §§ 841, 846. An agreement with the absent Palestino is readily inferred from Zavala's statements and the telephone calls, and the object of the agreement—transferring a dealer-sized quantity of cocaine to Palestino—is no less apparent. A slightly more inventive offense would be a charge of aiding and abetting Palestino's *attempt* to possess with intent to distribute, under 18 U.S.C. §§ 2, 841. *See, e.g., United States v. Kottmyer,* 961 F.2d 569 (6th Cir.1992).

But Zavala was not charged with conspiracy, or with aiding and abetting an attempt, nor did a jury convict him of such crimes.

The formalities of indictment and jury trial are prescribed by the Constitution. U.S. Const., Amends. V, VI. Further, given that these offenses were not charged, it is hardly sufficient to say that *this* record contained evidence to support such a conviction for such an offense. We do not know what evidence the record might contain if the defendant had been given notice that he was charged with a quite different offense (say, conspiracy) instead of, or in addition to, the offense charged (here, possession).

Thus the conviction for possession can stand only if a reasonable jury could find that Zavala did possess the cocaine within the meaning of 21 U.S.C. § 841. If the statute used the term "possess" as a lay juror might understand it prior to instructions from the judge, it might be a stretch to say that Zavala "possessed" the cocaine in the bag. There is no evidence that he even touched the bag or saw the cocaine or that he was ever alone in the room with it or that he had a practical opportunity to remove it from the hotel. These facts explain why Zavala's main argument on appeal is that his relationship to the cocaine cannot be deemed "possession."

The difficulty with the argument is that the concept of possession in the drug statute comes freighted with a history of interpretation. Congress was here concerned not with "possession" in a narrowly focused situation (*e.g.,* actual possession of a weapon on an aircraft) but with possession of drugs incident to their distribution. There is every reason to think that Congress wished to cast its net widely so that, assuming *mens rea,* a defendant proximately associated with the drugs would be reached by the statute. The prevailing interpretation of "possession," in the framework of the drug statutes, reflects that broad reach.

■ Under settled law, "possession" includes not merely the state of immediate, hands-on physical possession but also "constructive" possession, including possession through another, and joint as well as exclusive possession. Further these concepts can be combined so that, for example, "joint constructive possession" is quite as bad as having the drugs exclusively in one's own pocket. *E.g., United States v. Batista–Polanco,* 927 F.2d 14, 18–19 (1st Cir.1991). These con-

cepts of constructive and joint possession are almost uniformly reflected in both decisions[2] and in standard instructions.[3]

■ "Constructive" possession is commonly defined as the power and intention to exercise control, or dominion and control, over an object not in one's "actual" possession. *E.g., United States v. Acevedo, supra,* 842 F.2d at 507. The "constructive possession" label may confuse jurors at first—drug trial juries routinely ask to be reinstructed on the definition of possession—but the underlying idea is important and not so difficult to grasp. Courts are saying that one can possess an object while it is hidden at home in a bureau drawer, or while held by an agent, or even while it is secured in a safe deposit box at the bank and can be retrieved only when a bank official opens the vault. The problem is not so much with the idea as with deciding how far it should be carried.

Here, we think is at least arguable that Zavala was *not* shown to possess the drugs while he and Santos were in the room together. Santos apparently had exclusive control of the bag during this period. It contained drugs for which he had not been paid; Zavala was not the named person to whom it was to be delivered; and Santos refused Zavala's suggestion that the bag be entrusted to Zavala's friends in another room. If the agents had broken into the room and arrested Zavala at this point, a directed verdict of acquittal might have been required.

■ But once both parties departed from the room leaving the drugs inside, the situation altered. It is not that Zavala got closer to the drugs—indeed, he moved further away from them—but rather that two other circumstances changed: first, Santos surrendered his actual possession of them; and second, with the acquiescence of both parties, the drugs were secured in Zavala's room. In the context of this case, we think that a jury could then find both requisites of construc-

tive possession: that Zavala had sufficient power to control the drugs and an intention to exercise that power.

Turning first to the *power* to exercise control, we begin with the fact that the drugs were left in Zavala's room with his knowledge and consent while Zavala was awaiting the arrival of an accomplice to pay for them. It is fair to describe the location as Zavala's hotel room because he was effectively in occupation and the jury could reasonably infer that he could return there at will. The evidence showed that the room, although registered in Palestino's name, had been lent to two occupants. It was Zavala who emerged when Santos arrived at the hotel and the room was called; and it was Zavala who took Santos to the room to await "his friend" Palestino.

■ The location of drugs or firearms in a defendant's home or car is a common basis for attributing possession to the defendant.[4] This is so even if the residence or room is shared by others. *E.g., United States v. Garcia,* 983 F.2d 1160, 1164 (1st Cir.1993). The cases do not say that possession is automatic but rather that the location of the object in a domain specially accessible to the defendant can (at least where knowledge is admitted or inferred) be enough to permit the jury to find possession.

Admittedly, Zavala's power to control in this case was diluted because Santos had not yet been paid and might well have resisted any attempt by Zavala to return to the room and carry away the drugs. But by the same token a jury could infer that drugs now stored in Zavala's hotel room, awaiting transfer to Zavala's accomplice, were at least as much within Zavala's power to control as within Santos' power. If each had an effective veto over the other, it would still be joint possession. Two drug dealers with cocaine in the back seat of their car might both possess it even though neither would let the

**2.** *See, e.g., United States v. Akinola,* 985 F.2d 1105, 1109 (1st Cir.1993); *United States v. Vargas,* 945 F.2d 426, 428 (1st Cir.1991); *United States v. Acevedo,* 842 F.2d 502, 507 (1st Cir. 1988).

**3.** E. Devitt, C. Blackmar, K. O'Malley, 2 *Federal Jury Practice and Instructions, Criminal* § 54.08, at 906 (1990) (collecting cases); L. Sand, J. Sif-

fert, W. Loughlin, S. Reiss, 2 *Modern Federal Jury Instructions* 56–9 (1992) (same).

**4.** *See, e.g., United States v. Wight,* 968 F.2d 1393, 1398 (1st Cir.1992); *United States v. Echeverri,* 982 F.2d 675, 678 (1st Cir.1993); *United States v. Chapdelaine,* 989 F.2d 28, 34 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994).

other out of sight. *Cf. United States v. Wight, supra,* 968 F.2d at 1398 (weapon in car given to one defendant "possessed" by the other where in reach of both).

The issue of *intention* is quite as important as the issue of power. Someone might have effective power over drugs simply because they were located within reach while their true owner was temporarily absent; but if such a person had power over the drugs (say, as a temporary visitor to the room in which they were located) but had no intention to exercise that power, there might still be no crime. Here, Zavala's connection with the drugs stored in his hotel room was not at all innocent: the drugs were stored there for the purpose (so far as Zavala knew and intended) of facilitating their transfer to his accomplice, Palestino.

In many cases, intention and knowledge are inferred solely from the location of the drugs in an area to which the defendant has a priority of access. Here, Zavala's state of mind is established by independent evidence: his statements that Palestino would be there soon, his suggestion that the drugs be stored temporarily in another room, apparently with his confederates; and by the cellular telephone calls by Zavala and to him seemingly from Palestino. No reasonable jury could have had any doubt that Zavala was there to assist in the transmission of the drugs lodged in his room.

Assuming Zavala's guilty mind, it might still be argued that his precise intention was to aid in the storage and transfer of the drugs but not to "control" the drugs. We think this is too fine a distinction. Defendant's intention to have the drugs stored in his room, incident to their intended transfer to a confederate, seems to us an intention intimately related to his power to control the drugs. If a jury finds this to be constructive possession, we do not think that it has stretched the concept too far or betrayed the intention of Congress.

■ Finally, it is beside the point that Zavala's "possession" in the hallway was extremely brief and that Zavala probably could not have escaped with the drugs because of the police surveillance. That the police are present and ready to frustrate distribution does not make possession of drugs any less a crime, and a minute of possession is as much an offense as a year of possession. *See Santiago v. United States,* 889 F.2d 371, 376 (1st Cir.1989). If Palestino himself had arrived and Santos had handed him the bag, he would be guilty of possession even if the police had burst into the room sixty seconds later. The completion of the crime does not require that the defendant have a sporting chance.

### III.

■ We turn to Zavala's other main claim of error on this appeal. Zavala contends that the prosecutor so often interrupted the defense summation with objections as to constitute misconduct and to prevent the jury from hearing the defense's closing argument. We have reviewed the complete transcript of defense counsel's summation and conclude that misconduct did not occur nor was the defense summation seriously impaired.

It is quite true that the prosecutor's objections were numerous. Zavala's brief claims that 20 objections were made in an argument that covered 37 transcript pages. The government's brief may also miss the mark by arguing that the claim now made was waived because not argued to the district court: defense counsel did state, after a number of objections from the prosecutor, "I have an objection to the continuous interruptions." This is the same argument now renewed on appeal.

But if the objection was preserved, it was also largely answered by the trial judge's rejoinder to defense counsel: "Well, then you behave better. Stick to the facts before the Court and before the jury and you won't have any interruptions." The fact is that most of the objections ruled on by the judge were sustained on the ground that the defense counsel was arguing facts outside the record, misstating evidence, or misstating the law. Unless the trial judge was mistaken in his rulings, defense counsel himself provoked many of the interruptions.

We have looked at both the rulings and the objections. The former were generally well within the district court's discretion, and most of the latter were at least arguable. For example, speaking of Santos, Zavala's

counsel said to the jury: "Remember that [the confidential informant] is the person that traditionally he's a distrusted individual because he can work always as a double agent." Many prosecutors would have let this pass; but here the prosecutor objected ("Objection, your Honor. Going outside the record 'traditionally not to be trusted.'"), and the judge sustained her objection on the ground that it was not a reasonable inference from the evidence.

What inferences can arguably be drawn from specific evidence is often a matter of degree and of judgment. Trial judges themselves differ in their approaches, and "how far you can go" with a particular judge is the kind of lore that counsel collect and pass on to each other. Here the prosecutor operated on a hair trigger, and the trial judge was reasonably strict in governing the closing argument. But the fact is that there was no evidence as to the general character of confidential informants, nor any evidence to suggest that Santos was dishonest or a double agent.

Without recounting each objection, we think that the prosecutor was right or arguably right often enough to foreclose any suggestion that her aim was to impede the defense; put differently, the defense summation provided some basis for legitimate complaint. The trial judge's rulings, some of which favored the defendant, appear eminently reasonable. Finally, based on a reading of the entire defense summation, it seems to us that—despite some interruptions—the essence of counsel's argument for acquittal was thoroughly conveyed to the jury.

*Affirmed.*

Dissent follows.

COFFIN, Senior Circuit Judge (dissenting).

I believe the court errs by expanding the definition of "constructive possession" beyond what is supported by the relevant caselaw, stretching the statutory reach of "possession" under 21 U.S.C. § 841(a)(1) dangerously and unnecessarily far.

My colleagues concede that it is at least arguable that Zavala was *not* shown to possess the drugs while he and Santos were in the room together; and that had the agents broken into the room and arrested Zavala at this point, a directed verdict of acquittal might have been required. They contend, however, that once Zavala, on Santos' suggestion, locked the drugs in his hotel room while the two men went to get a drink, Zavala "possessed" the drugs, by virtue of the facts that he had yielded actual possession of the drugs, and that he had priority of access to the room in which they were stored.

The court reaches this conclusion by relying on an interpretation of "constructive possession" which I cannot help thinking is both incorrect and overbroad. "Constructive possession," as the majority properly states, is established by showing that a person knowingly had the *power* and *intention* at a given time to exercise dominion and control over an object, either directly or through others. *See United States v. Acevedo,* 842 F.2d 502, 507 (1st Cir.1988) (emphasis added). The court, in turn, defines "power" in physical terms: in its view, the requisite "power" exists if the contraband is in a location specially accessible to a defendant, such as in one's home, hotel room, or car, or located within his or her reach.

I am persuaded that this reliance on physical power of access understates the law's requirements. Although, as the court points out, a lay person's understanding of "possession" is not helpful, I cannot so easily sidestep our and other courts' use of the word "dominion," which connotes ownership or a right to property. *Black's Law Dictionary* 486 (6th ed. 1990).

More importantly, in this and other circuits, the caselaw supports a reading of "power" as the *right* or *authority* to exercise control, or dominion and control, over something not in one's actual possession. *See United States v. Ocampo-Guarin,* 968 F.2d 1406, 1410 (1st Cir.1992); *United States v. Latham,* 874 F.2d 852, 861 (1st Cir.1989); *United States v. Lamare,* 711 F.2d 3, 5–6 (1st Cir.1983); *see also United States v. Manzella,* 791 F.2d 1263, 1266–67 (7th Cir.1986) (Posner, J.) (defendant "must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess [the drugs].... Mere association with those who possess the drugs is not good enough."); *United States v. Tolliver,* 780 F.2d 1177, 1183

(5th Cir.1986), *vacated and remanded on other grounds,* 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987); *United States v. Reese,* 561 F.2d 894, 898 n. 8 (D.C.Cir.1977).

For example, in *Ocampo-Guarin,* we found sufficient evidence of "power" to establish constructive possession of a suitcase and the cocaine inside it, where the defendant carried baggage claim tickets "which represented her legal right to reclaim the luggage." 968 F.2d at 1410. Similarly, in *United States v. Lamare,* we upheld a finding of constructive possession of a firearm that had been left as collateral for a towing charge owed by the defendant, because the defendant "could have taken actual possession of the pistol at any time by paying the towing charge . . . and intended to do so." 711 F.2d at 5–6.

The fact that contraband is located in a place specially accessible to a defendant may be sufficient to establish a defendant's power to exercise dominion or control over it, and thus support a finding of constructive possession, if there is a showing that the defendant has the right or authority to exercise control over the object at issue, or if the record is silent as to his right or authority over the contraband. But here the very facts militating against a finding of constructive possession while Santos and Zavala were in the room together—the fact that the drugs had not been paid for, the fact that Zavala was not the intended recipient, and Santos' refusal to follow Zavala's suggestion to transfer them to another room—effectively refute any presumption that Zavala had any claim on the drugs.

None of the cases cited by the majority support the conclusion that, where knowledge is admitted or inferred, the location of contraband in a place specially accessible to a defendant, without more, is sufficient to establish constructive possession. For example, in *United States v. Echeverri,* 982 F.2d 675, 678 (1st Cir.1993), it was the "totality of the circumstances"—the fact that drugs and drug paraphernalia were found in plain view, only four feet from the defendant himself, together with the fact that the contraband was found in his apartment—that persuaded the court that the evidence was sufficient to support a finding of constructive possession.

And in *United States v. Chapdelaine,* 989 F.2d 28, 33–34 (1st Cir.1993), the court found defendant in constructive possession of bullets found in his bedroom closet based, in part, on the fact that they matched those in a firearm found in defendant's actual possession.

In *United States v. Wight,* 968 F.2d 1393, 1397 (1st Cir.1992), the single case cited by the majority that approaches the situation before us, a jury convicted Wight, the passenger in a van in which a pistol was found between the driver's and the passenger's seat, of possessing the pistol during the drug trafficking crime, but acquitted the driver of the firearm possession charge. We upheld the finding of Wight's constructive possession of the firearm, noting that based on evidence of Wight's leading role in the drug transaction, "[i]t was reasonable for the jury to infer that he, and not [the driver], was in charge of the operation and, as such, exercised control over [the driver], the van, its contents, and the firearm." *Id.* at 1398.

I find more apposite the Seventh Circuit's decision in *United States v. DiNovo,* 523 F.2d 197 (7th Cir.1975). In *DiNovo,* the court reversed a wife's conviction for possession of heroin, notwithstanding her cohabitation with her husband in a trailer where 2 pounds of heroin and other drug paraphernalia were found. *Id.* at 201–02. The court found that even if the wife knew of her husband's drug possession, this did not mean that she possessed the drugs, absent a showing of her right to exercise control over them. *Id.*

To the extent that the court jettisons all idea of legal right or practical claim to the contraband and assesses "power" in terms of physical capacity to seize, it vastly widens the concept of constructive possession. Contraband stored in the locked box of a another person could be found within the power of a defendant skilled in the use of lock picking or explosives. Or, in a case like *Wight,* the finding as to constructive possession would turn on whether the driver was bigger and tougher than the passenger.

The same weakness affects the court's reasoning as to the presence of intent to exercise dominion over the drugs. The particular intent is not, as the court would have it, to facilitate transfer of the drugs to their in-

tended recipient, his presumed associate Palestino. The required intent is that defendant intends to exercise his claim of dominion over the drugs, i.e., to take control for himself. So the court, in my view, stretches the contours of both "power" and "intent."

Finally, we should remember why we are of divided views about the propriety of extending the scope of constructive possession beyond that of any apposite authority. It is because, as the court correctly notes, Zavala could have been charged with conspiracy to possess drugs with intent to distribute them, or with aiding and abetting Palestino's attempt to possess with intent to distribute. But Zavala was not so charged; and the mere fact that guilt is in the air should not allow us to extend the reach of the criminal possession statute in these circumstances. There needs to be some meaningful distinction between the crime of conspiracy to possess, and possession itself. The rule of the present case, allowing the government to prove constructive possession simply by having a confidential informant deposit contraband in a hotel room shared with a target, and then leave the room with this person, with the arresting officers waiting until the door shuts, would erode any such distinction.

I am uncomfortable in taking this significant step—particularly where the purpose served is to bail out a maladroit prosecution. I therefore respectfully dissent.

## ORDER OF THE COURT

Entered: June 28, 1994

Before BREYER,* Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, SELYA, CYR, BOUDIN and STAHL, Circuit Judges.

The petition for rehearing is denied. Judge Coffin would grant rehearing. A majority of the judges entitled to vote on the suggestion for rehearing en banc not having voted in favor of rehearing en banc, the suggestion for rehearing en banc is denied.

* Chief Judge Stephen Breyer did not participate in

Judges Selya and Cyr favor rehearing en banc in this case.