**Not For Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1235

UNITED STATES OF AMERICA,

Appellee,

v.

SANTIAGO MARINO REYES-LARA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Dyk,* Circuit Judges.

John F. Cicilline, on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and Emily Gray Rice, United States Attorney, on brief for appellee.

December 20, 2016

---

* Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Defendant Santiago Marino Reyes-Lara ("Reyes") pleaded guilty to possession with the intent to distribute controlled substances.  He appeals his sentence of eighty-four months' imprisonment, arguing that the district court improperly calculated his recommended sentence under the United States Sentencing Guidelines (the "Guidelines").  We affirm.

## I.  BACKGROUND

### A.  Factual Background

On April 22, 2014, federal agents obtained an arrest warrant for Reyes and a search warrant for a Nissan Xterra (the "Xterra") that Reyes frequently drove.  That evening, New Hampshire police officers stopped Reyes, who was driving the Xterra.  Officers found 22.3 grams of crack, 6.5 grams of cocaine, and 6.5 grams of heroin in the Xterra.  They also found $795 in cash on Héctor Palancos, who was a passenger in the Xterra at the time of the stop.

On April 23, 2014, agents executed a search warrant for 95 Marble Street, Lawrence, Massachusetts ("95 Marble"), a house that Reyes's girlfriend leased.  In a closet in one bedroom of 95 Marble, which "appeared to be a 'religious' type room," agents found a safe containing 34.8 grams of crack, 208.9 grams of cocaine, and 32.9 grams of heroin and a loaded firearm.  The master bedroom "appeared from clothing and other items to be occupied by

a male and a female," and the third bedroom "appeared to be occupied by young children."

There were two adults and two children at 95 Marble when agents executed the warrant. One of the adults told agents that she was babysitting the two children, but she did not know the children's mother. The other adult subsequently told defense counsel that he had been residing at 95 Marble.

Agents found various items at 95 Marble that indicated Reyes was an occupant:

1. The same three types of drugs found in the Xterra.

2. A Notice of Residency and probation reporting forms in the name of Jean Carlos Sotomayor-Venerio, an alias frequently used by Reyes.

3. A National Grid electricity bill in the name of Leonardo Colón-Montez. Reyes's landlord[1] identified Reyes as "Leonardo Colón-Montez" from a photograph and provided a phone number for Reyes that was also "associated with the National Grid account for 95 Marble."

4. A vehicle registration in the name of Herbert Ralph. Reyes stipulated that officers would testify that "Mr. Ralph stated that he registered the [vehicle] for [Reyes] in exchange for narcotics."

In addition to the items found at 95 Marble, officers had observed Reyes in his Xterra in "the area of" 95 Marble on February 12, 2014. On April 10, 2014, officers again observed

---

[1] Reyes claimed that he lived at 8 Rollins Street, Lawrence, Massachusetts. Elias Azzi owned 8 Rollins Street, which he leased to Reyes's sister.

Reyes near 95 Marble. Later that day, while still driving the Xterra, Reyes was videotaped selling controlled substances to a confidential informant. Similarly, a tracking device on the Xterra showed that it stopped at 95 Marble on April 22, 2014; Reyes was arrested later that day while driving the vehicle. Reyes's "on and off" girlfriend also "stated that she 'sometimes' stayed with [Reyes] at 95 Marble." Reyes's girlfriend signed a lease for 95 Marble, and she is the mother of two children with Reyes. Further, the government identified two Facebook pictures, one from July 29, 2013 and one from April 19, 2014, showing Reyes at 95 Marble.

After his arrest, Reyes consistently identified himself as Jean Carlos Sotomayor-Venerio, including to the probation officer who drafted his presentence report and the district court. As of the time of his objection to the presentence report, Reyes still "maintained that his true identity [was] Jean Carlos Sotomayor-Venerio," although he abandoned that on appeal.

## B. Procedural History

On May 22, 2015, Reyes pleaded guilty to unlawful possession with the intent to distribute heroin and crack, in violation of 21 U.S.C. § 841(a)(1). His presentence report included the drugs seized at 95 Marble in calculating Reyes's base offense level as 24. It also included three two-level enhancements

-4-

for the firearm found at 95 Marble, for Reyes's managerial role, and for obstruction of justice for providing a false name to the probation officer, and it denied a three-level credit for acceptance of responsibility because Reyes had obstructed justice. Reyes objected to the inclusion of the drugs seized at 95 Marble, the three enhancements, and the denial of credit for acceptance of responsibility.

The district court agreed that Reyes was not subject to an enhancement for having a managerial role, but it denied Reyes's other objections. First, it determined that it was "satisfied beyond a reasonable doubt" that Reyes possessed the drugs and firearm at 95 Marble. It found that (1) Reyes "was engaged actively in the drug-dealing business," (2) 95 Marble was his girlfriend's house, (3) the Xterra stopped at 95 Marble on the day that Reyes was arrested while driving the Xterra, (4) he was paying the electric bill for 95 Marble using a false name, and (5) the car title and probation forms showed that Reyes "was staying at that apartment and was treating it as his apartment."

The district court also ruled that it was "clear that [Reyes was] misrepresenting his identity and continue[d] to do so," but it stated that a five-level increase "may be excessive," and that it would consider that "when we get to the variance question." The district court then calculated "a total offense

level 28, criminal history category III," resulting in a Guidelines recommendation of 97 to 121 months. The district court ultimately imposed a sentence of 84 months.

Reyes timely appealed.

## II. <u>ANALYSIS</u>

Reyes argues that the evidence does not support the district court's finding that he had constructive possession over the drugs and pistol found at 95 Marble and that his use of a false name during presentencing proceedings was not material. "We review the district court's . . . factual findings for clear error." <u>United States</u> v. <u>Tavares</u>, 705 F.3d 4, 24 (1st Cir. 2013) (quoting <u>United States</u> v. <u>Cortés-Cabán</u>, 691 F.3d 1, 26 (1st Cir. 2012)).

## A. The District Court Did Not Commit Clear Error by Finding that Reyes Had Constructive Possession of the Drugs and Gun

Before turning to Reyes's factual arguments, we briefly address the standard of proof the government must meet for a sentence enhancement. Citing <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), Reyes argues that "drug quantity . . . needs to be established by proof beyond a reasonable doubt."[2] Reyes is wrong. "[O]nce convicted, a defendant has no right under the Due Process

---

[2] At the sentencing hearing, the district court stated that it was "satisfied beyond a reasonable doubt" that Reyes possessed the drugs at 95 Marble.

Clause to have his sentencing determination be confined to facts proved beyond a reasonable doubt." United States v. Lombard, 72 F.3d 170, 175 (1st Cir. 1995). "A sentencing court's operative factfinding is generally subject only to a 'preponderance of the evidence' standard." Id. at 176. Apprendi applies only to facts "that increase[] the penalty for a crime beyond the prescribed statutory maximum." 530 U.S. at 490. In fact, it made clear that judges may "exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment within the range prescribed by statute." Id. at 481 (emphasis removed). Here, the district court found facts related to its Guidelines application -- an exercise in discretion -- and its sentence was well below the twenty-year maximum sentence of 21 U.S.C. § 841(b)(1)(C). Thus, the district court only needed to find by a preponderance of the evidence that Reyes possessed the drugs for Guidelines purposes. See United States v. Ramírez-Negrón, 751 F.3d 42, 49 (1st Cir. 2014).

We now turn to the district court's findings. "The location of drugs or firearms in a defendant's home or car is a common basis for attributing possession to the defendant . . . even if the residence or room is shared by others." United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994). Constructive possession is not "automatic" in these cases, but it can permit a

finding of possession if the contraband is "in a domain specially accessible to the defendant" and where the defendant's knowledge can be inferred. Id. Prior drug possession in similar circumstances can be evidence of possession. See United States v. Rosado, 273 F. App'x 1, 3 (1st Cir. 2008) (unpublished) (listing that the defendant "was previously involved in drug dealing" as a factor in finding constructive possession of contraband).

Here, the district court determined that Reyes's probation form and car title, both found at 95 Marble, were "the kind of documents you would find" only if Reyes "control[led] the place." The fact that Reyes was paying the electricity bill and his girlfriend leased 95 Marble indicated that it was Reyes, and not some other person, who stored drugs there. In addition, the evidence linked Reyes to drugs on two separate occasions after he had stopped at 95 Marble: first when he sold drugs to a confidential informant and again when he was arrested in the Xterra. Finally, officers found the same three types of drugs at 95 Marble that they found in the Xterra when they arrested Reyes. Although these are common drugs, the fact that all three were present in both the Xterra and at 95 Marble, and that Reyes stopped at 95 Marble the same day he was arrested, is evidence that Reyes possessed the drugs at both places. The pistol was found in the same closet as the drugs, and there is no indication that it

belonged to any other person.  Thus, the district court did not clearly err by finding by a preponderance of the evidence that Reyes constructively possessed the drugs and pistol seized at 95 Marble.

**B.    The District Court Did Not Commit Plain Error by Finding that Reyes Obstructed Justice by Using a False Name**

Reyes argues that giving the name Jean Carlos Sotomayor-Venerio to the probation officer was not material because his prior convictions were under that name -- and so it could not have affected his sentencing -- and he had been using Jean Carlos Sotomayor-Venerio for years and so was not giving a false name. In fact, he asserts that, if he had given the name Reyes, the "probation [officer] would not have been able to add two points to his criminal history" because the probation officer would not have known that Reyes was on probation.  Reyes did not make these arguments in the district court, and so we review them only for plain error.  United States v. Correa-Osorio, 784 F.3d 11, 17 (1st Cir. 2015).  We will therefore reverse only if the district court made "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights (i.e., the error made him worse off), and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding."  Id. at 18.

Reyes does not dispute that he gave a false name to the probation officer and the district court.  The Sentencing

-9-

Guidelines include "providing materially false information to a judge . . . [or] to a probation officer in respect to a presentence or other investigation for the court" as examples of obstruction. U.S.S.G. § 3C1.1 cmt. n.4(F) & (H).[3]  And Reyes has not cited a single case in which a defendant provided a false name to a probation officer or a district court and was not subject to an obstruction of justice enhancement under U.S.S.G. § 3C1.1.  The district court found that although the probation officer learned that Reyes was using a false name "relatively quickly," Reyes "did obstruct justice."  Absent contrary precedent, that finding was not a clear or obvious error.

### III.  CONCLUSION

For the foregoing reasons, we affirm Reyes's sentence.

**Affirmed**.

---

[3]  Application Note 5, on which Reyes relies, applies to statements made "at arrest" or "to law enforcement officers," U.S.S.G. § 3C1.1 cmt. n.5(A) & (B), and so it does not apply here.